STATE OF NORTH CAROLINA v. ALVIN AVERY HOOD

No. 8425SC1100

(Filed 1 October 1985)

### Homicide § 21.7— second degree murder—insufficient evidence

The State's evidence was insufficient to support defendant's conviction of second degree murder where it raised no more than a suspicion or conjecture that a crime was committed or that defendant was the person who committed it and showed only that defendant was in the area of the trailer in which the victim died at the time a shot was fired and that defendant was once heard to express his willingness to shoot the victim.

APPEAL by defendant from *Pope, Judge.* Judgment entered 4 May 1984 in CALDWELL County Superior Court. Heard in the Court of Appeals 20 August 1985.

Defendant was indicted for first degree murder and convicted of second degree murder in the death of his brother-in-law, Leslie Joseph "Joe" Hagaman. Defendant received a prison sentence of twenty years.

The State's evidence tended to show the following facts and circumstances. Hagaman was killed by a gunshot wound to the head from the firing of a .25 caliber bullet. His body, still warm, was found in his house trailer at 8:30 p.m. on Friday, 1 July 1983. Although the deceased kept several different types of guns and ammunition, no weapon of .25 caliber was found in the trailer and there were no open windows or outside doors in the room where the body was found.

The last person to speak with Hagaman was Wilma Taylor, a neighbor across the street, at 11:30 p.m. on the previous evening, June 30. Twenty-one hours passed from that time until the body was found. The State's pathologist was unable to estimate the time of death.

Mrs. Taylor testified that, on the morning of July 1, she heard a car turn into the Hagaman drive and then a male voice calling the name "Joe." Approximately five minutes later she heard a gunshot. About ten minutes after that she heard a car "roaring" by and looked out her living room window to see defendant driving his car away. Mrs. Taylor later testified that

"they shot quite a bit" over at the Hagaman trailer. Her husband and three sons did not hear the gunshot.

Mr. Taylor, who remained at home for the greater part of that day, testified that he saw Jim Hagaman, Joe's brother, drive up to the trailer around 10:00 a.m., go to the back door, come back around and drive away. Jim testified he had come to visit Joe, but when he saw that the padlock on the outside of the back door was locked, he left.

Deputy Sheriff Joel Cook of the Caldwell County Sheriff's Department went by the trailer at 5:30 p.m. Seeing no vehicles there, he did not stop. He returned at 8:30 p.m. and saw four people: Jeanetta Hagaman, the deceased's estranged wife; Charles Hood, the brother of Jeanetta and defendant; and two friends, Ruby and Colden Crump, coming out of the trailer. The back door was open. Deputy Cook went inside the trailer where he noticed a cold can of beer on the kitchen counter. He then went into a bedroom and found Hagaman's body.

The evidence showed that defendant had been to the Hagaman trailer the previous Wednesday. He had helped Mike Reese, a co-worker of Jeanetta's, remove some pictures and household accessories for her from the trailer. While riding with Reese to take the items to Jeanetta, the two passed Joe Hagaman driving on the highway. Reese testified that at that point defendant showed him a small handgun he carried and said "Well, if he [comes back] I am going to shoot him because he is the type of fellow that will shoot you . . . . He is the type fellow that will shoot you and kill you if you come back."

Defendant did not present any evidence.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Kaye R. Webb, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Robin E. Hudson, for defendant.*

WELLS, Judge.

In one assignment of error, defendant contends that the trial court erred in denying his motion to dismiss for insufficiency of the evidence.

The evidentiary principles governing motions to dismiss are set out at length in *State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649 (1982). Briefly summarized, they are that the evidence must be considered in the light most favorable to the State, with the benefit of all permissible favorable inferences. If the trial judge finds substantial evidence, regardless of weight, of each essential element of the crime, and that defendant committed it, the motion should be denied.

"Substantial evidence" may be defined as "any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it. . . ." *Id.* Though all the evidence against defendant is circumstantial, that fact alone should not bar submission of the case to the jury. The test of the sufficiency of the evidence to withstand the motion to dismiss is the same whether the evidence is direct, circumstantial, or both. *State v. Bullard*, 312 N.C. 129, 322 S.E. 2d 370 (1984).

The defendant argues the possibility that Hagaman committed suicide. Hagaman was killed by a .25 caliber bullet, but no .25 caliber pistol was found anywhere in the vicinity of the body. However, at least four people were known to have been at the open trailer before the investigation was begun. The possibility that Joe Hagaman committed suicide and that his suicide weapon was removed by another party directs the conclusion that the State failed to show that a crime had been committed. This alone is reason to sustain the motion to dismiss. *See State v. Cutler*, 271 N.C. 379, 156 S.E. 2d 679 (1967).

Assuming *arguendo* that the State established sufficient evidence for a jury to conclude that Hagaman's death was the result of homicide, we proceed to other important weaknesses in the State's case.

For the most part, the leading cases dealing with motions to dismiss in homicide trials concern scenarios in which the State's evidence tends to show that the defendants had an opportunity to commit the crime, but failed to show the reasonable inference of any motive. *See, e.g., State v. White*, 293 N.C. 91, 235 S.E. 2d 55 (1977) and *State v. Cutler, supra.* Evidence of either motive *or* opportunity is not sufficient to carry the case to the jury. *State v.*

*Bell,* 65 N.C. App. 234, 309 S.E. 2d 464 (1983), *aff'd,* 311 N.C. 299, 316 S.E. 2d 72 (1984).

In the case *sub judice,* neither motive *nor* opportunity may reasonably be inferred. One witness heard a shot fired in the direction of the Hagaman residence and thereafter identified defendant driving away. Even taking this evidence in the light most favorable to the State, it is not reasonable to infer that defendant had the *opportunity* to commit the crime. There is no evidence that defendant had access to the trailer or that he otherwise gained entrance to it. There is no evidence that defendant was armed or that the deceased was present in the trailer at the time.

A similar logical analysis, when applied to a second witness's testimony of defendant's stated willingness to shoot Hagaman, prohibits any inference that defendant had a *motive* to kill. The context of his statement, that he would shoot Hagaman because "[h]e is the type of fellow that will shoot you . . . ," indicates a willingness of defendant to defend himself if confronted by Hagaman in a shooting situation. An intent to initiate a shooting is not evident in defendant's remarks.

In *State v. Furr,* 292 N.C. 711, 235 S.E. 2d 193, *cert. denied,* 434 U.S. 924, 98 S.Ct. 402, 54 L.Ed. 2d 281 (1977), the defendant had threatened his ex-wife several times and had tried to find someone whom he could hire to kill her. The door was unlocked at the trailer, where the deceased was shot. The Supreme Court ruled that the State had failed to offer substantial evidence that the defendant was the one who shot his wife.

In *State v. Lee,* 294 N.C. 299, 240 S.E. 2d 449 (1978), defendant had beaten the deceased, his girlfriend, who had admitted to having an affair. He had also threatened to kill her. He was seen with a pistol the day of the shooting. The defendant and the deceased had lived together, and her body was found a few miles from their mobile home. The Supreme Court ruled that, even though the State had produced substantial evidence of the defendant's opportunity and *mens rea* to commit murder, it had not offered substantial evidence which showed that defendant had actually committed the act of murder.

In *State v. West,* slip op. no. 844SC1184 (N.C. App. Sept. 3, 1985), defendant returned to the marital home to confront her

husband, his girlfriend, and the girlfriend's two-year-old son. The girlfriend hid in a closet but was found by the wife, after which a scuffle ensued. The three adults then left the house with the child remaining inside. The husband and girlfriend returned over two hours later to find the child suffocated. This Court ruled that both women had a motive to kill the child: the girlfriend, to keep the child quiet when she feared discovery by the defendant; and the defendant, out of rage against her husband's infidelity. There was no evidence to show that defendant in fact suffocated the child. This logical gap necessitated a reversal of the judgment.

The above cases were reversed despite the showing by the State that the defendant had a motive and an opportunity to commit the crime. In the instant case, the State has not presented evidence giving rise to a reasonable inference of either motive or opportunity. No one had had any contact with the deceased for twenty-one hours before he was found. The State's pathologist could not estimate a time of death. Although defendant was near the deceased's trailer at 6:30 a.m., the usual entrance to the trailer was seen padlocked on the outside at 10:30 a.m. Four persons were observed departing from the trailer at 8:30 p.m. In essence, the State's evidence tends to show only two occurrences: (1) that Hood was in the area of the trailer at the time a shot was fired; and (2) that he was once heard to express his willingness to shoot the deceased.

Finally, the evidence of the cause of death is ambiguous enough to raise only a suspicion that a crime was actually committed.

The State's evidence in this case raises no more than suspicion or conjecture that a crime was committed or that defendant was the person who committed it. Under such circumstances, it was error to deny defendant's motion to dismiss. *See State v. Davis*, 74 N.C. App. 208, 328 S.E. 2d 11, *disc. rev. denied*, 313 N.C. 510, 329 S.E. 2d 406 (1985) and cases cited and discussed therein.

We do not reach defendant's second argument, which was based on deprivation of due process and right to a speedy trial.

Reversed and vacated.

Chief Judge HEDRICK and Judge PHILLIPS concur.