STATE OF NORTH CAROLINA v. PATRICIA McGEE CHILDRESS

No. 42A87

(Filed 2 December 1987)

### 1. Homicide § 21.5— first degree murder—evidence sufficient

The trial court did not err in a murder prosecution by denying defendant's motion to dismiss at the close of the evidence where the deceased and defendant were the only two people in the home of the deceased; the deceased was shot in the back either from a distance of approximately two feet or point blank through some object such as a sheet; there was testimony that the deceased could not have shot himself; and, for deceased to have shot himself accidentally, he would have had to lose control of the pistol, have it move to his back and fire either two feet from him or point blank through the sheet while he was lying on the bed with the sheet over him.

### 2. Homicide § 11— defense of accident—motion to dismiss denied

The trial court in a first degree murder prosecution did not err by submitting the case to the jury despite defendant's evidence of accident. On a motion to dismiss, the court must consider the defendant's evidence which explains or clarifies the State's evidence, but this does not mean that the State may not rely on the more probable inferences which may be drawn from the evidence if the defendant's evidence contradicts those inferences.

### 3. Criminal Law § 106.2; Homicide § 21.5— inference on inference permitted

The evidence in a first degree murder prosecution was sufficient even though it required an inference on an inference. There is no logical reason why an inference which naturally arises from a fact proven by circumstantial evidence may not be made; insofar as other cases hold that in considering circumstantial evidence an inference may not be stacked on an inference, they are overruled.

### 4. Homicide § 15— accusations of victim's nephew—no prejudice

There was no prejudicial error in a prosecution for first degree murder where the court allowed a witness to testify that a nephew of the deceased, who had been called to the trailer immediately after the shooting by defendant, had said "The bitch killed my uncle," and allowed the nephew to testify that he had accused defendant of killing the victim. The jury knew that the nephew did not know who shot the deceased except by the same evidence which was presented to the jury.

### 5. Homicide § 20— items found at crime scene—relevant

The trial court did not err in a first degree murder prosecution by admitting into evidence a bloody napkin found in the bathroom of the trailer within which the shooting occurred, a photograph of a broken door latch in the bedroom of the trailer, and testimony as to a pistol found under the rug in the bedroom where the three items had some tendency to make a fact at issue in the case more probable.

**6. Criminal Law § 85.3— murder—cross-examination of defendant—bad conduct —no prejudice**

　　The trial court in a first degree murder prosecution did not commit plain error by allowing the district attorney to cross-examine defendant about the various names by which she had been known in such a way that the jury could infer that she had been married four times or to elicit testimony that defendant had spent the night with deceased on their first date.

**7. Criminal Law § 114.2— instructions on evidence and contentions of State—no prejudice**

　　The trial court in a first degree murder prosecution did not commit plain error or express an opinion in its instructions by reciting the evidence and the State's contentions.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from a life sentence imposed by *Washington, Judge,* at the 9 September 1986 Criminal Session of Superior Court, YADKIN County. Heard in the Supreme Court 9 September 1987.

The defendant was tried for first degree murder. The State's evidence showed the defendant had lived a good part of the time in 1985 in a mobile home with Robert Vanhoy. On 31 December 1985 the defendant and Robert Vanhoy attended a New Year's Eve party with Randy and Sandra Burcham. Randy Burcham was Robert Vanhoy's nephew. The two couples left the party at approximately 3:00 a.m. and Randy Burcham drove the defendant and Robert Vanhoy to Robert Vanhoy's mobile home.

The Burchams went to their home and had been there a short period of time when they received a telephone call from the defendant who said, ". . . get down here. Robert has shot himself." When the Burchams arrived at the mobile home, the defendant told them that Robert Vanhoy had tried to shoot her but had shot himself. Randy Burcham went to the bedroom and saw Robert Vanhoy lying face down on the bed with a bullet hole in his back. A .25 caliber cartridge was found on the bed and a .25 caliber pistol was found under the bed. The pistol was cocked with the hammer back. A bullet was found in the body of Robert Vanhoy.

A State Bureau of Investigation agent testified as a ballistics expert that the bullet taken from the body of Robert Vanhoy was fired from the pistol found under the bed. There was a sheet on the bed with a hole in it with powder burns and human blood

around the hole. The SBI agent testified that a contact shot caused the hole in the sheet. There was testimony that the pistol would not fire unless the hammer was pulled back and that it took thirteen pounds of pressure to pull the trigger.

The defendant testified that when she and Robert Vanhoy arrived at the mobile home from the party, she changed clothes in preparation for a trip to the hospital to see her son. She testified that Robert Vanhoy called her to the bedroom, told her to lie down and forbade her from leaving the mobile home. She testified that she lay down on the bed with her back to Robert Vanhoy. She felt him put something in her back and say "he was going to shoot her before he'd let her leave." She then stated she:

> flipped over in the bed, heard a shot go off. I jumped up. He was rolling backwards and forwards in the bed. I seen a hole in his back. I went around and dialed the operator to get help. . . . I was trying to get some help. I couldn't tell them how to get there. I couldn't do nothing. I guess I was just hysterical.

Dr. Howard Nabors testified that he was a surgeon on duty in a hospital in Winston-Salem when Robert Vanhoy was brought to the hospital. He testified that the bullet entered the victim's back between the shoulder blades and traveled through the body in a downward direction until it lodged in the abdomen. He testified that in his opinion the bullet wound caused Robert Vanhoy to bleed to death. He also testified that he did not think the bullet wound could have been self-inflicted. Dr. Modesto Scharyj testified that he is a pathologist and the medical examiner for Forsyth County. He testified the death of Robert Vanhoy was caused by massive bleeding as a result of the bullet wound. He said, "I would categorically deny that this could, in my opinion, this could not be a self-inflicted wound." Dr. Scharyj testified that the absence of smoke stain in the wound showed that either the bullet was fired from a distance of more than two feet or there was something that filtered the powder granules. He testified he did not know a sheet with a bullet hole in it had been found at the scene.

The jury found the defendant guilty as charged. The case was not tried as a capital case and the defendant was sentenced to life in prison. The defendant appealed.

*Lacy H. Thornburg, Attorney General, by Isaac T. Avery, III, Special Deputy Attorney General, and Theodore A. Bruce, Associate Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Robin E. Hudson, Assistant Appellate Defender, for defendant appellant.*

WEBB, Justice.

[1] In her first assignment of error, the defendant contends it was error not to allow her motion to dismiss at the close of the evidence. She bases this argument on the premise that the State did not prove that Robert Vanhoy did not accidentally shoot himself. In this case the State relies on circumstantial evidence for the proof of a part of its case. In evaluating this evidence the State is entitled to every reasonable inference that may be drawn therefrom. *State v. Byrd*, 309 N.C. 132, 305 S.E. 2d 724 (1983).

In order to survive a motion to dismiss the charge of first degree murder, there must be substantial evidence that the defendant intentionally killed Robert Vanhoy with malice and with premeditation and deliberation. *State v. Davis*, 289 N.C. 500, 223 S.E. 2d 296 (1976). The question posed by this assignment of error is whether these elements may be inferred from the evidence which was introduced. The direct evidence upon which the State relies is that the deceased and the defendant were the only two persons in the home of the deceased. The deceased was shot in the back and either from a distance of approximately two feet or point blank through some object such as a sheet. There was testimony that the defendant could not have intentionally shot himself. It is difficult to conclude that Robert Vanhoy shot himself accidentally if the State's evidence is believed. He would have had to lose control of the pistol and have it move to his back and fire either two feet from him or point blank through the sheet, and this while he was lying on the bed with the sheet over him. It is much more likely that the defendant had control of the gun immediately before it was fired.

If the defendant had control of the gun immediately before it was fired, the question is whether the jury could conclude that she intentionally shot the deceased. We hold that the jury could do so. From the evidence it is difficult to conclude the shooting by the defendant was an accident. There was testimony that the pis-

tol had to be cocked before it was fired and that it took thirteen pounds of pressure to pull the trigger. It is hard to imagine the pistol accidentally coming to a position pointed towards Robert Vanhoy's back while he was lying face down under a sheet. The much more likely inference from the evidence is that the defendant intentionally pointed the pistol at Robert Vanhoy and intentionally pulled the trigger.

The jury could infer malice from an intentional shooting of Robert Vanhoy which proximately caused his death. *State v. Propst*, 274 N.C. 62, 161 S.E. 2d 560 (1968). Premeditation means thought beforehand for some length of time, however short. Deliberation means an intention to kill, executed by the defendant in a cool state of blood. "No fixed amount of time is required for the mental processes of premeditation and deliberation constituting an element of the offense of murder in the first degree, it being sufficient if these mental processes occur prior to, and not simultaneously with, the killing." *State v. Sanders*, 276 N.C. 598, 615-616, 174 S.E. 2d 487, 499-500 (1970), *rev'd on other grounds*, 403 U.S. 948, 29 L.Ed. 2d 860 (1971). Having concluded that the defendant intentionally shot Robert Vanhoy, the jury could conclude from her action that she thought about it for some short time beforehand and that she executed her intention in a cool state of blood. The evidence introduced by the State was sufficient for the jury to find the defendant intentionally killed Robert Vanhoy with malice and with premeditation and deliberation. The charge of first degree murder was properly submitted to the jury.

[2] The defendant presented evidence of accident and she contends the case should not have been submitted to the jury because the State did not prove the killing was not accidental. Her evidence of accident was that she was lying on the bed with her back to Robert Vanhoy. Robert Vanhoy put the gun in her back and she "flipped over." The gun then accidentally went off and shot Robert Vanhoy in the back. This was evidence of accident submitted to the jury which the jury did not believe. In rebutting this evidence the State was entitled to use the inferences which it contended were more probable from its evidence than the explanation of the shooting given by the defendant.

The defendant relies on several cases which we find inapplicable. *State v. Bates*, 309 N.C. 528, 308 S.E. 2d 258 (1983), in-

volved a charge of felony murder. This Court held that felony murder should not have been submitted to the jury because the evidence did not support a verdict of the underlying felony of armed robbery. The Court said that on a motion to dismiss the court must consider the defendant's evidence which explains or clarifies the State's evidence. This does not mean that if the defendant's testimony contradicts the more probable inferences which may be drawn from the evidence, the State may not rely on these inferences.

In *State v. Foust*, 258 N.C. 453, 128 S.E. 2d 889 (1963), this Court held there was insufficient evidence of second degree murder to be submitted to the jury when the evidence showed the defendant and the deceased were in a room with no one else present and the deceased was killed by the firing of a shotgun. The defendant told the investigating officers and testified that he was holding the shotgun in his lap when his girlfriend grabbed it. He pulled the shotgun away from her and it went off. The defendant's explanation was consistent with the physical evidence and this Court held the evidence did not show an intentional killing. The defendant's testimony in this case is not consistent with the physical evidence.

*State v. Hood*, 77 N.C. App. 170, 334 S.E. 2d 421 (1985), is a case in which the deceased was found in his home with a .25 caliber bullet wound in his head. The defendant had been seen leaving the area of the victim's home. The Court of Appeals said there was no evidence the defendant had been in the decedent's home. This distinguishes *Hood* from this case.

In *State v. Edwards*, 224 N.C. 577, 31 S.E. 2d 762 (1944), there was no evidence of how the deceased died. This Court, in holding that judgment of nonsuit should have been entered, said the State had not proved the corpus delicti. In this case the evidence is undisputed that the decedent died of a gunshot wound. *State v. Brown*, 308 N.C. 181, 301 S.E. 2d 89 (1983), involved the proof of a corpus delicti sufficiently to make a confession admissible. It has no application to this case.

[3] The defendant also contends the evidence is not sufficient to convict her of murder because to do so requires an inference on an inference. *State v. Holland*, 318 N.C. 608, 350 S.E. 2d 56 (1986); *Byrd*, 309 N.C. 132, 305 S.E. 2d 724 and *State v. LeDuc*, 306 N.C.

62, 291 S.E. 2d 607 (1982). She argues that if the circumstances are proved which allow the jury to infer that she intentionally shot Robert Vanhoy causing his death, the law does not allow an inference from this inferred fact that the killing was with malice and premeditation and deliberation. It is true that some of our cases say that in considering circumstantial evidence we will not make an inference on an inference. This is a rule that is much criticized by legal scholars. For instance it is stated at 1A Wigmore, *Evidence* § 41 (Tillers rev. 1983):

> It was once suggested that an inference upon an inference will not be permitted, i.e., that a fact desired to be used circumstantially must itself be established by testimonial evidence, and this suggestion has been repeated by several courts and sometimes actually has been enforced. There is no such orthodox rule; nor can there be. If there were, hardly a single trial could be adequately prosecuted.

*See also* Louisell and Mueller, *Federal Evidence* § 94 (1977). There is no logical reason why an inference which naturally arises from a fact proven by circumstantial evidence may not be made. This is the way people often reason in everyday life. In this case the inferences on inferences dealt with proving the facts constituting the elements of the crime. We hold that the jury could properly do this. Insofar as *Holland, Byrd, LeDuc* and other cases hold that in considering circumstantial evidence an inference may not be made from an inference, they are overruled.

[4] The defendant next contends the court committed prejudicial error in its rulings on the evidence. Sandra Burcham was the first witness to testify. She testified that she and her husband Randall Burcham went to the mobile home immediately after receiving the call from defendant that Robert Vanhoy had been shot. She testified that after Randall Burcham saw Robert Vanhoy with a bullet hole in his back Randall Burcham said to her, "The bitch killed my uncle." Randall Burcham was allowed to testify that he had accused the defendant of killing Robert Vanhoy.

The defendant contends these two statements were admitted for proving the truth of the assertions and are hearsay as defined in N.C.G.S. § 8C-1, Rule 802. Assuming the challenged testimony was inadmissible hearsay, we hold the defendant was not prejudiced by its admission. In order to show reversible error, the de-

fendant must show there is a reasonable possibility that had the error not been committed a different result would have been reached at the trial. N.C.G.S. § 15A-1443 and *State v. Billups,* 301 N.C. 607, 272 S.E. 2d 842 (1981). The jury knew that Randall Burcham did not know who shot Robert Vanhoy except by the same evidence which was presented to the jury. It is not likely they gave his opinion much weight in reaching a decision.

[5] The defendant next contends it was error to admit into evidence three items found at the scene of the alleged crime. These items were (1) a napkin found in the bathroom with human blood on it, (2) a photograph of a broken door latch in the bedroom, and (3) testimony as to a .38 caliber pistol which was found under the rug in the bedroom where Robert Vanhoy was shot. The defendant contends this evidence is not relevant as relevancy is defined in N.C.G.S. § 8C-1, Rule 401, and should have been excluded pursuant to N.C.G.S. § 8C-1, Rule 402. We hold that these three items of evidence had some tendency to make a fact at issue in this case more probable. That makes the three items relevant and admissible. The evidence showed the defendant did not have blood on her when the Burchams arrived at the mobile home. The fact that there was a bloody napkin in the bathroom had a tendency to prove she had removed blood from her body after the shooting. The State contended that the defendant forced her way into the bedroom and shot Robert Vanhoy. A broken latch on the floor of the bedroom had some tendency to prove this contention. The evidence was that the deceased owned a .38 caliber pistol. The gun with which he was killed belonged to the defendant. Proof that the deceased had his own pistol in the room has a tendency to show that if it was the deceased who was pointing a pistol at the defendant, it is more likely he would have used his own pistol. This makes the defendant's description of the events less believable.

[6] The defendant next contends it was error for the district attorney to be allowed to cross examine her about the various names by which she had been known. The defendant contends the only purpose of this cross examination was to show she had been married four times and it violates the rule of *State v. Morgan,* 315 N.C. 626, 340 S.E. 2d 84 (1986), which prohibits cross examination as to instances of bad conduct unless the subject matter pertains to credibility. The defendant did not object to these

questions. N.C.R. App. P. 10(b)(1) provides that, with some exceptions not applicable here, an objection to a question of a witness must be made at trial in order to assign error on appeal to allowing the question. The plain error rule was adopted in *State v. Odom*, 316 N.C. 306, 341 S.E. 2d 332 (1986), to alleviate the hardship imposed by N.C.R. App. P. 10(b)(2) which requires an exception be made to a jury charge before error may be assigned to the charge on appeal. This Court extended the plain error rule to evidentiary rulings in *State v. Black*, 308 N.C. 736, 303 S.E. 2d 804 (1983). We held in *State v. Walker*, 316 N.C. 33, 340 S.E. 2d 80 (1986), and *State v. Oliver*, 309 N.C. 326, 307 S.E. 2d 304 (1983), that in order to invoke the plain error rule this Court must determine that the alleged error "tilted the scales" and caused the jury to reach its verdict convicting the defendant. We cannot hold that allowing the defendant to be questioned in such a way that the jury could infer that she had been married four times "tipped the scales" and caused her to be convicted. We do not invoke the plain error rule for this assignment of error.

The defendant also contends it was error for the State to be allowed to elicit testimony that she spent the night with Robert Vanhoy on their first date. Assuming this was error it was harmless. There was extensive testimony that defendant and Robert Vanhoy had lived together for some time prior to the day Robert Vanhoy was killed. There is not a reasonable possibility there would have been a different result if the jury had not known the date their relationship commenced. N.C.G.S. § 15A-1443(a).

[7] Defendant's last assignment of error is to the charge of the court. She did not object to the charge at trial and relies on the plain error rule to have us review it. The defendant argues the instructions given by the court permitted an inference of premeditation and deliberation based on evidence not before the jury. *State v. Buchanan*, 287 N.C. 408, 215 S.E. 2d 80 (1975). She also says the court expressed an opinion on the evidence in violation of N.C.G.S. § 15A-1232. In charging on the contentions of the State the court said some of the evidence upon which the State relies is:

> the fact that there were only two persons in the trailer at the time of the shooting, the defendant walked out of the trailer and the victim was carried out of the trailer on a

stretcher. The State contending that the lack of any eye-witnesses in this home at the time of the shooting to tell you exactly what happened. . . . the wound was inflicted by another person when considering the opinion of two medical expert witnesses that the wound was not self-inflicted. . . . And consider the conduct and the statements of the Defendant after the time of the shooting, and the statements made by her to various persons, including officers, as to whether the act was suicide or an accident, or whether the cause of the act was unknown. And, another factor that the State is contending is the passage of time after the shot before anyone, neighbors, emergency medical services personnel, or any law enforcement authorities, were notified.

We can find no error in any part of the charge which we have quoted. The defendant does not point out how the court expressed an opinion on the evidence and we do not believe it did so. The judge recited the evidence and told the jury what the State contended they should infer from this evidence. The fact that two people were in the room at the time of the shooting and only one of them walked out supports an inference that the one who walked out shot the other. When the court said there was not an eyewitness, the jury is bound to have known it meant there was not an eyewitness other than the defendant. The two doctors had testified that in their opinions Robert Vanhoy did not intentionally shoot himself. The court could tell the jury they could consider this testimony in considering whether the wound was self-inflicted. The defendant contends her conduct and all her statements after the shooting were consistent with her defense that the deceased accidentally shot himself. It is not error for the court to charge the jury that the State contended otherwise. The State's evidence showed that defendant and Robert Vanhoy arrived at the mobile home at 3:00 a.m. It was one-half hour later when defendant called for help. The State contended that the defendant shot the deceased shortly after they arrived at the mobile home and she did not call for help for several minutes. The judge was stating this contention of the State. If we invoked the plain error rule, it would not be helpful to the defendant.

No error.