STATE OF NORTH CAROLINA v. EZZARD CHARLES QUICK

No. 106A88

(Filed 4 January 1989)

**1. Criminal Law § 73.2— statements in letter and by witness—no hearsay—admissibility to show motive**

Statements in a "Dear John" letter written by a homicide victim to defendant, testimony elicited on cross-examination of defendant concerning the contents of the letter, and statements made by the victim's grandmother to de-

fendant during an argument between defendant and the victim the day of the shooting were not hearsay and were properly admitted to show defendant's motive for killing the victim. N.C.G.S. § 8C-1, Rule 802.

### 2. Constitutional Law § 65— right of confrontation—statements to defendant—letter from victim—cross-examination of witnesses

Defendant's constitutional right of confrontation was not violated by the admission of a "Dear John" letter written by the victim to defendant where the fact that the victim wrote the letter and not the truth of the matters stated therein was at issue, the letter was authenticated by two witnesses, and defendant had the opportunity to cross-examine both witnesses. Sixth Amendment to the U.S. Constitution; Art. I, §§ 19 and 23 of the N.C. Constitution.

### 3. Criminal Law § 93— time of admission of exhibit for the State

The trial court did not abuse its discretion in admitting an exhibit for the State, a letter from a homicide victim to defendant, at the end of the State's cross-examination of defendant for the limited purpose of showing his knowledge of the letter. Nor did the trial court err in permitting the State to reintroduce the letter over defendant's objection during the State's presentation of rebuttal evidence where defendant was given the opportunity to present further rebuttal evidence. N.C.G.S. § 15A-1221; N.C.G.S. § 15A-1226.

### 4. Homicide § 21.5— malice, premeditation and deliberation—sufficiency of evidence

The State presented sufficient evidence of malice, premeditation and deliberation to sustain defendant's conviction of first degree murder where the State's evidence tended to show that defendant threatened the victim immediately after arguing with her and after being restrained from getting into an automobile with her; defendant reentered the victim's house carrying a shotgun after having been ordered out of the house by the victim's grandmother; the grandmother fled out the front door when she saw defendant with the shotgun but heard a shot before she reached the back door of the house; the grandmother reentered the house and saw defendant dismantling the gun; defendant left the house without staying to render aid to the victim and was found six miles away nine hours later; the shotgun was never found; the victim died as a result of complications of a shotgun wound to the back; and the shot had been fired from a distance of only six to eight feet from the victim.

DEFENDANT appeals, pursuant to N.C.G.S. § 7A-27(a), from a judgment imposing life imprisonment entered by *Hobgood (Robert H.), J.,* at the 2 November 1987 Criminal Session of Superior Court, LEE County, upon a jury verdict of guilty of murder in the first degree. Heard in the Supreme Court 13 October 1988.

*Lacy H. Thornburg, Attorney General, by Thomas J. Ziko, Assistant Attorney General, and Joan H. Byers, Special Deputy Attorney General, for the State.*

*G. Hugh Moore for defendant-appellant.*

FRYE, Justice.

Defendant appeals from a sentence of life imprisonment upon his conviction of first degree murder. The case was tried as a non-capital case after the trial judge determined that there were no statutory aggravating circumstances. On appeal to this Court, defendant contends that the trial court erred by admitting allegedly hearsay statements of the deceased victim into evidence, by admitting evidence for the State during the presentation of defendant's case, and by denying defendant's motion to dismiss for insufficiency of the evidence. We find no error.

Defendant and the victim, Bridgette Richmond, had been lovers for about a year prior to the victim's death on 18 July 1987. On the previous day, the victim had placed in defendant's automobile a letter in which she stated that she no longer wished to continue a relationship with defendant. Defendant admitted at trial that he found the letter around 6:30 p.m. on the evening of 17 July 1987. Later that same evening, defendant and the victim got into an argument as the victim and her brother were leaving a party. Defendant attempted to get into the automobile with the victim and her brother but was restrained by the victim's brother. Defendant threatened to get a gun and told the victim and her brother that they were "both dead meat."

During this time, Bridgette Richmond lived with her grandmother, Lillian McCormick. She did not return to her grandmother's house on the night of 17 July 1987 but returned at approximately 10:15 on the morning of 18 July 1987. About fifteen minutes after the victim returned home, defendant arrived at the house, walked in and sat down to watch television. Shortly thereafter, defendant and the victim began arguing.

During the course of the argument, Mrs. McCormick entered the room and said to defendant, "Why don't you let her alone. She said she was breaking up with you. And get out." Defendant walked out of the house onto the front porch. After several minutes, defendant reached under a couch on the porch and pulled out a shotgun. Defendant reentered the house carrying the gun in both hands with the barrel pointed forward.

Upon seeing defendant with the shotgun, Mrs. McCormick fled through the front door and circled around the house to the

back door. Defendant and the victim started fighting and Mrs. McCormick heard a shot before she reached the back door. She entered the house and saw defendant "breaking his gun down." The victim was lying on the floor in the next room with "blood every which way." Defendant left through the back door carrying the shotgun. He was arrested nine hours later, approximately six miles from the crime scene.

Defendant testified that the victim's death was an accident, that while he had read the letter from the victim, he did not consider it to be a "Dear John" letter. Defendant testified that after the party he drove to the "lover's lane," parked his automobile and waited for the victim until the early hours of the morning on 18 July 1987. Defendant then walked to the victim's grandmother's house where he sat on the porch and waited for the victim but later went to sleep in a nearby abandoned automobile.

Upon awakening defendant returned to the house, walked in and approached the victim. Defendant left the house after what he characterized as a "disagreement" but denied that Mrs. McCormick had asked him to leave. Defendant testified that as he left the house, he remembered that he had left an old shotgun with the victim. He testified that he and the victim had previously placed the shotgun under the couch on the porch in order to provide the victim with some protection when she returned home from work late at night.

After retrieving the gun from beneath the couch, defendant testified that he entered the house with the shotgun in order to ask the victim to give him the shell which he had also given her when they placed the gun under the couch. He further testified that when he entered the house with the gun, the victim grabbed the gun and tried to wrestle it from him. Defendant stated that at this point, he realized the gun must be loaded and struggled with the victim to retain control of the gun for his own safety. Defendant testified that in the course of the struggle, both he and the victim fell in the kitchen. The victim regained a standing position before defendant and began to leave the kitchen toward the front door. Defendant testified that as he attempted to stand, the shotgun fell from his hand, struck the table and discharged.

Investigators arrived at the scene shortly after the shooting and found defendant's automobile parked on a side road two or three hundred yards from the victim's house. The shotgun was never found; defendant stated that he dropped it in a field. The detective investigating the scene found "a forearm to what appeared to be a single barrel shotgun" on the backseat of the automobile. A subsequent search of the automobile produced the victim's letter to defendant.

The victim was alive when detectives arrived at the scene. She died later at the hospital. The examining physician testified that the victim died as a result of complications of a shotgun wound to the back. He further testified that the shot had been fired from a distance of six to eight feet and the upward path of the bullets indicated either that the victim was bending forward when she was shot or that the gun had been fired from slightly beneath her at an upward angle.

[1]  Defendant first contends that the trial court erred by admitting certain statements of the deceased victim into evidence. The statements were introduced in the form of: 1) a letter from the victim to defendant, 2) testimony of the victim's grandmother, and 3) defendant's testimony on cross-examination. The letter stated in part:

> This is just a letter to let you know that this is the end of our relationship. . . . I can't take you any longer. . . . You and I can be friends and not lovers. . . . Ezzard (I) stopped caring about you around the last of October of 1986 when I found out that you wasn't a real man. . . . I get sick just looking at you all the time. . . .

The victim's grandmother testified to statements made by her to defendant during an argument between the victim and defendant the day of the homicide. Defendant's testimony on cross-examination confirmed his knowledge of the letter and its contents.

Defendant contends that the admission of the statements violated N.C.G.S. § 8C-1, Rule 802. Rule 802 provides that "[h]earsay is not admissible except as provided by statute or by these rules."

Defendant's contention that these statements are inadmissible under Rule 802 as hearsay is without merit. N.C.G.S. § 8C-1, Rule 801(c), defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Statements offered for the purpose of showing that the statement was made and that the defendant was aware of the statement are admissible for those purposes and are not considered hearsay. *State v. Walden*, 311 N.C. 667, 319 S.E. 2d 577 (1984); *State v. Swift*, 290 N.C. 383, 226 S.E. 2d 652 (1976). Statements offered, not to prove the correctness of the statement, but to show the motive of defendant in committing the homicide, are not hearsay and are admissible. *State v. Kirkman*, 293 N.C. 447, 238 S.E. 2d 456 (1977).

The letter and the testimony of the victim's grandmother were offered for the purpose of showing that defendant's motive for killing the victim was because she wished to discontinue their relationship. The cross-examination of defendant regarding the contents of the letter was designed to show that he knew its contents prior to the homicide. The statements were relevant for the purposes for which they were admitted and their admission into evidence did not violate Rule 802.

[2]  Defendant also contends that the admission of these statements violated his constitutional right to confront and cross-examine the witnesses. Defendant's right to confront and cross-examine those witnesses who testify against him is guaranteed by the sixth amendment of the United States Constitution. *California v. Green*, 399 U.S. 149, 26 L.Ed. 2d 489 (1970). The confrontation guarantee of the sixth amendment applies to the states through the fourteenth amendment. *Pointer v. Texas*, 380 U.S. 400, 406, 13 L.Ed. 2d 923, 928 (1965). A similar right of the accused to confront the accusers and witnesses against him is guaranteed by the North Carolina Constitution. N.C. Const. Art. I, §§ 19 and 23 (1984 & Cum. Supp. 1988). Nevertheless, the confrontation clause is not violated by the admission of a declarant's out-of-court statements as long as the declarant testifies as a witness and is subject to full and effective cross-examination. *California v. Green*, 399 U.S. 149, 26 L.Ed. 2d 489 (1970).

The confrontation clause was not violated in this case. As to the grandmother's testimony concerning what she told the de-

fendant, defendant had the opportunity to cross-examine the grandmother. As to the letter written from the victim to the defendant, it was authenticated by two witnesses. Defendant had the opportunity to cross-examine both witnesses. It is not necessary that he be allowed to confront the writer of the letter because the truth of the matter stated in the letter was not at issue. The fact that the victim wrote the "Dear John" letter is what the State wanted to prove. This depended on the credibility of the two witnesses who authenticated her signature. Since defendant was able to confront the two witnesses, the confrontation clause was not violated.

[3] Defendant next contends that the trial court erred by admitting evidence for the State during the presentation of defendant's case contrary to the order of proceedings established by N.C.G.S. § 15A-1221. Defendant assigns error to the timing of the court's admission of State's Exhibit 16, the letter from the deceased victim to defendant.

The order of proceedings is regulated by N.C.G.S. § 15A-1221, as defendant notes; however, the issue of admission of evidence during the presentation of an opponent's case is regulated by N.C.G.S. § 15A-1226. This statute provides in pertinent part:

(a) Each party has the right to introduce rebuttal evidence concerning matters elicited in the evidence in chief of another party. The judge may permit a party to offer new evidence during rebuttal which could have been offered in the party's case in chief or during a previous rebuttal, but if new evidence is allowed, the other party must be permitted further rebuttal.

(b) The judge in his discretion may permit any party to introduce additional evidence at any time prior to verdict.

N.C.G.S. § 15A-1226 (1988).

The statute is clear authorization for a trial judge, within his discretion, to permit a party to introduce additional evidence at any time prior to the verdict. *State v. Riggins*, 321 N.C. 107, 361 S.E. 2d 558 (1987). The judge may also permit a party to offer new evidence which could have been offered in the party's case in chief or during a previous rebuttal as long as the opposing party

is permitted further rebuttal. *State v. Lowery*, 318 N.C. 54, 347 S.E. 2d 729 (1986).

A review of the record reveals that State's Exhibit 16 was admitted *sua sponte* by the trial court at the end of the state's cross-examination of defendant for the limited purpose of showing his knowledge of the letter. The letter was reintroduced over defendant's objection during the State's presentation of rebuttal evidence after the close of defendant's case. There is nothing in the record which suggests that defendant was prevented from presenting further rebuttal evidence. In fact, the trial judge asked if there was anything else to be presented by either side and both parties responded in the negative. It thus appears that the trial court followed the statute in admitting the exhibit during rebuttal and we find no abuse of discretion in admitting the exhibit for a limited purpose following cross-examination of defendant.

[4] Finally, defendant contends that the trial court erroneously denied his motion to dismiss made at the close of all the evidence. Defendant contends that the evidence was insufficient to sustain a conviction of first degree murder because the State failed to present substantial evidence of each element of the offense charged.

A motion to dismiss is properly denied if substantial evidence of each essential element of the offense charged is presented at trial. *State v. Stone*, 323 N.C. 447, 373 S.E. 2d 430 (1988). The evidence must be considered in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn from that evidence. *State v. Bullard*, 312 N.C. 129, 322 S.E. 2d 370 (1984). Murder in the first degree is defined as the "unlawful killing of a human being with malice and with premeditation and deliberation." *State v. Calloway*, 305 N.C. 747, 751, 291 S.E. 2d 622, 625 (1982). The essential elements of murder may be established by circumstantial evidence. *State v. Childress*, 321 N.C. 226, 362 S.E. 2d 263 (1987).

Defendant essentially asserts that the evidence was insufficient to establish that he committed the homicide with malice and with premeditation and deliberation because the State's evidence was circumstantial while his testimony showed that the shooting was accidental. He relies on *State v. Foust*, 258 N.C. 453, 128 S.E.

2d 889 (1963), where this Court held the evidence insufficient to show malice in order to support a charge of second degree murder. The Court examined the ostensibly threatening remarks made by the sixteen-year-old defendant and concluded that, under the circumstances, they were "just sort of sweetheart talk" and did not permit a legitimate inference that defendant killed the victim with malice. The facts in *Foust* should be contrasted with *State v. Childress*, 321 N.C. 226, 362 S.E. 2d 263, where this Court distinguished *Foust* and upheld the submission of first degree murder to the jury notwithstanding defendant's evidence of accident and the reliance by the State on inferences to be drawn from circumstantial evidence. Without belaboring the point, we find that the evidence in the instant case more closely resembles the evidence in *Childress* than that in *Foust.*

In the instant case, the State's evidence shows that defendant threatened the victim immediately after arguing with her and after being restrained from getting into the automobile with her; that defendant reentered the house carrying a shotgun after having been ordered out of the house by the victim's grandmother; that the grandmother fled when she saw defendant with the shotgun but heard a shot before she reached the back door of the house; that when she reentered the house, she saw defendant dismantling the gun; that defendant left the house without staying to render aid to the victim and was found six miles away nine hours later. This evidence, when considered together with the expert opinion that the victim was shot in the back from a distance of six to eight feet and with the disappearance of the shotgun, is inconsistent with an accident theory and supports an inference that the shooting was intentional and with premeditation and deliberation. *See State v. Childress*, 321 N.C. 226, 362 S.E. 2d 263. Malice may be presumed from the intentional use of the shotgun, clearly a deadly weapon. *Id.* at 230, 362 S.E. 2d at 266.

When all the evidence in the record is considered in the light most favorable to the State, it is clear that there was sufficient evidence of defendant's guilt to survive his motion to dismiss and to sustain the jury verdict finding defendant guilty of murder in the first degree.

No error.