STATE OF NORTH CAROLINA v. MATTHEW DARAN McCRAY

No. 321A94

(Filed 3 November 1995)

## 1. Evidence and Witnesses § 675 (NCI4th)— untimely motion to strike

Defendant's motion to strike a witness's in-court identification of defendant was not timely, and defendant waived objection to the identification, where defendant made no objection to the prosecutor's question and no motion to strike at the time the witness identified defendant, and defendant's motion to strike was made only after the witness responded to two additional questions from the prosecutor, the State moved, again without objection or motion to strike, that the record reflect that the witness had identified defendant, and the prosecutor began to ask the witness a fourth question.

**Am Jur 2d, Trial §§ 395-401, 461-472.**

**Necessity and sufficiency of renewal of objection to, or offer of, evidence admitted or excluded conditionally. 88 ALR2d 12.**

## 2. Homicide § 232 (NCI4th)— first-degree murder—premeditation and deliberation—sufficiency of evidence

The State's evidence was sufficient to support defendant's conviction of first-degree murder on the theory of premeditation and deliberation where it tended to show that the victim was sitting in front of an apartment talking with two friends when he

was shot by defendant six times; three eyewitnesses identified defendant as the killer; there was no evidence that the victim provoked defendant, but there was evidence of ill will between defendant and the victim resulting from a previous altercation between the victim and a third person; prior to the shooting defendant told the third person that "he wanted to do it" and the third person handed him a gun; after the killing, defendant bragged about how he "did it" and asked if the victim was dead; at least one shot to the victim's head was fired with the muzzle of the gun pressed against the victim's skin; and some wounds were inflicted upon the victim while the victim was lying helpless on the ground.

**Am Jur 2d, Homicide §§ 425 et seq.**

**3. Evidence and Witnesses § 90 (NCI4th)— exclusion of testimony—prejudice outweighing probative value**

Testimony by two defense witnesses, a police officer and a poolroom owner, was properly excluded from a murder trial on the ground that the probative value thereof was substantially outweighed by the danger of unfair prejudice where the testimony would have shown that the officer was called to investigate shots fired outside a poolroom, the murder victim attempted to hide behind a truck, a .380 semiautomatic weapon was found behind the truck, and the poolroom owner told the officer he did not want the victim on his premises, since the testimony did not show that the victim did the shooting or that anyone other than defendant had a motive to kill him, and the testimony was prejudicial to the State. N.C.G.S. § 8C-1, Rule 403.

**Am Jur 2d, Evidence §§ 301-312, 333 et seq.**

**4. Evidence and Witnesses § 117 (NCI4th)— killer's description as fitting another—guilt of third party not shown— exclusion of testimony**

The trial court did not err by refusing to permit a witness to testify in a murder trial that an eyewitness's description of the assailant more accurately fit her son than her grandson, the defendant, where three eyewitnesses identified defendant as the man they saw shoot the victim; the witness was not present when the shooting occurred; and the excluded testimony did not directly point to the guilt of a third party.

**Am Jur 2d, Evidence §§ 560-564, 587.**

**Admissibility and weight of extrajudicial or pretrial identification where witness was unable or failed to make in-court identification. 29 ALR4th 104.**

Appeal as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Rousseau, J., at the 14 February 1994 Criminal Session of Superior Court, Guilford County, upon a jury verdict finding defendant guilty of first-degree murder. Heard in the Supreme Court 17 March 1995.

*Michael F. Easley, Attorney General, by Ellen B. Scouten, Assistant Attorney General, and Simone E. Frier, Attorney at Law, for the State.*

*Walter T. Johnson, Jr. for defendant-appellant.*

LAKE, Justice.

The defendant was indicted on 8 March 1993 for the first-degree murder of James Christopher Carelock. The defendant was tried capitally, and the jury found the defendant guilty of first-degree murder on the theory of premeditation and deliberation. Following a capital sentencing hearing, Judge Rousseau sentenced the defendant to a term of life imprisonment.

At trial, the State presented evidence tending to show that James Carelock was murdered during the early morning hours of 23 August 1992 while talking with friends outside apartment 306-E at the English Village Apartments in Greensboro, North Carolina.

Dr. Brent Hall, a forensic pathologist, performed an autopsy on the victim. Dr. Hall testified that the victim received six gunshot wounds to the body and head. Of the six wounds, one was to the right side of the victim's head and two were to the back of the victim's head. The first wound to the back of the head was a contact wound, indicating that the gun was pressed against the victim's skin when fired. The second wound to the back of the head had gunpowder residue around it, which indicated that the gun was fired within three feet of the victim. Dr. Hall testified that either of these two wounds could have caused the victim's death.

Maisha Kimber testified that she and her mother, Janice Seagroves, were sitting on the stoop in front of their apartment talking to the victim when the shooting occurred. Ms. Kimber and Ms. Seagroves each testified that they saw a man wearing dark or black

pants and a dark, striped shirt walk up to the victim and shoot him in the head. Ms. Kimber stated that the man was wearing black shoes, and Ms. Seagroves indicated that the shooter was wearing army boots. Ms. Seagroves made an in-court identification of the defendant as the man who shot James Carelock.

Michael Roberson testified that on the night of the murder, he, Shirley Burgess, Lionel McCray, Wyman Lowery and the defendant went to Roberson's apartment at the English Village Apartments. Roberson testified that he told the defendant and Lionel McCray that he saw the victim sitting outside of apartment 306-E. Roberson stated that he then heard the defendant say that "he would take care of it." Shirley Burgess also testified that she heard the defendant tell Lionel McCray that "he wanted to do it." Both Roberson and Burgess testified that after making this statement, they saw the defendant change into black sweat pants, a black shirt and black army boots. Ms. Burgess further testified that Lionel McCray gave the defendant a silver gun, that the defendant then left the apartment and that when the defendant returned a few minutes later, she heard him say that he "did it."

The State's evidence further showed that Michael Roberson and Wyman Lowery left Roberson's apartment before the defendant so that they could see what the defendant was going to do. Roberson testified that he saw the defendant walk up to the victim, hold a pistol to the victim's head and then shoot the victim in the head four or five times. Roberson stated that he was approximately sixty or seventy feet away from where the victim was sitting but had no difficulty seeing the defendant. Lowery testified that he saw the defendant fire at least three shots to the victim's head. Lowery further testified that he knew it was the defendant who shot the victim and not someone else because the defendant talked about it later that evening. Both Roberson and Lowery positively identified the defendant as the person they saw shoot the victim.

I.

[1] The defendant first assigns error to the trial court's denial of his motion to strike Janice Seagroves' in-court identification.

On direct examination of Ms. Seagroves, the following exchange occurred:

> Q. Ms. Seagroves, do you see the person in the courtroom who fired the gun at Jamie Carelock?

A. Yes, I do.

Q. Would you point him out, please?

A. Right there. (Indicating.)

Q. Would you describe for the record how he's dressed here in court?

A. A light shirt, black tie.

Q. Is he sitting at the counsel table here with his lawyers?

A. Yes.

[PROSECUTOR]: Ask the record to show she identified the defendant.

[COURT]: All right.

Q. Ms. Seagroves, did you—

[DEFENSE COUNSEL]: I object to that. Move to strike, and would like to be heard.

[COURT]: All right. Come up here.

The trial court then heard arguments before denying the defendant's motion to strike. We find no error with the trial court's ruling.

It is well established that "[e]rror may not be predicated upon a ruling which admits . . . evidence unless . . . a timely objection or motion to strike appears of record." N.C.G.S. § 8C-1, Rule 103(a)(1) (1992). Where the defendant seeks to challenge an in-court identification, a motion to strike an incompetent answer must be made when the answer is given. *State v. Banks*, 295 N.C. 399, 408, 245 S.E.2d 743, 749-50 (1978), *overruled on other grounds by State v. Collins*, 334 N.C. 54, 431 S.E.2d 188 (1993). A motion to strike will therefore be deemed untimely if the witness answers the question and the opposing party does not move to strike the response until after further questions are asked of the witness. *See State v. Lewis*, 281 N.C. 564, 569, 189 S.E.2d 216, 219, *cert. denied*, 409 U.S. 1046, 34 L. Ed. 2d 498 (1972).

In the case *sub judice*, the defendant's motion to strike Ms. Seagroves' in-court identification came well after the witness' response to the prosecutor's question. After identifying the defendant, Ms. Seagroves responded to two additional questions from the prosecutor, first describing the defendant's clothing and then indicat-

ing where the defendant was sitting in the courtroom. The State then moved, again without any objection or motion to strike by the defendant, that the record reflect Ms. Seagroves' identification of the defendant. Only after the prosecutor began to ask a fourth question did the defendant move to strike the witness' in-court identification. Clearly, the defendant's motion was not made in a timely manner. The defendant has therefore waived any objection to Ms. Seagroves' in-court identification. Accordingly, this assignment of error is overruled.

## II.

[2] By his second assignment of error, the defendant contends that the trial court erred by denying his motions to dismiss at the close of the State's evidence and at the close of all the evidence. Specifically, the defendant argues that the State's evidence was inconsistent and contradictory and, therefore, insufficient to sustain the charge against him. The defendant's argument misconstrues the appropriate standard for ruling on a motion to dismiss.

By presenting evidence, the defendant has waived his objection to the trial court's failure to dismiss at the close of the State's evidence. *State v. Mash*, 328 N.C. 61, 66, 399 S.E.2d 307, 311 (1991). Therefore, only defendant's motion to dismiss at the close of all the evidence is before this Court.

When a defendant moves for dismissal, the trial court must determine whether the State has presented substantial evidence of each essential element of the offense charged and substantial evidence that the defendant is the perpetrator. *State v. Quick*, 323 N.C. 675, 682, 375 S.E.2d 156, 160 (1989). If substantial evidence of each element is presented, the motion for dismissal is properly denied. *Id.* "Substantial evidence is relevant evidence that a reasonable mind might accept as. adequate to support a conclusion." *State v. Olson*, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992). In ruling on the motion to dismiss, the trial court must consider the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn from the evidence. *Id.* "[C]ontradictions or discrepancies in the evidence *are for the jury to resolve and do not warrant dismissal.*" *Id.* (emphasis added).

Murder in the first degree, the crime of which the defendant was convicted, is the intentional and unlawful killing of a human being with malice and with premeditation and deliberation. *State v. Fisher*,

318 N.C. 512, 517, 350 S.E.2d 334, 337 (1986). Malice may be presumed from the use of a deadly weapon. *State v. Porter*, 326 N.C. 489, 505, 391 S.E.2d 144, 155, (1990). The defendant's use of a firearm, in the instant case, satisfies the malice requirement. Therefore, the only remaining element necessary for the State to prove is the existence of premeditation and deliberation. "A killing is 'premeditated' if the defendant contemplated killing for some period of time, however short, before he acted." *State v. Williams*, 334 N.C. 440, 447, 434 S.E.2d 588, 592 (1993), *judgment vacated on other grounds*, —— U.S. ——, 128 L. Ed. 2d 42, *on remand*, 339 N.C. 1, 452 S.E.2d 245 (1994), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 61 (1995). A killing is "deliberate" if the defendant formed an intent to kill and carried out that intent in a cool state of blood, "free from any 'violent passion suddenly aroused by some lawful or just cause or legal provocation.' " *Id.* (quoting *State v. Fields*, 315 N.C. 191, 200, 337 S.E.2d 518, 524 (1985)). Premeditation and deliberation are mental processes and ordinarily are not susceptible to proof by direct evidence. Instead, they usually must be proved by circumstantial evidence. *State v. Brown*, 315 N.C. 40, 59, 337 S.E.2d 808, 822-23 (1985), *cert. denied*, 476 U.S. 1164, 90 L. Ed. 2d 733 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988). The circumstances generally considered probative of the existence of premeditation and deliberation are: (1) want of provocation on the part of the victim, (2) the conduct and statements of the defendant before and after the killing, (3) threats and declarations made by the defendant against the victim, (4) ill will or previous difficulty between the parties, (5) the dealing of lethal blows after the victim has been felled and rendered helpless, and (6) evidence that the killing was done in a brutal manner. *See State v. Williams*, 308 N.C. 47, 68-69, 301 S.E.2d 335, 349, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177, *reh'g denied*, 464 U.S. 1004, 78 L. Ed. 2d 704 (1983); *State v. Potter*, 295 N.C. 126, 130, 244 S.E.2d 397, 401 (1978). The nature and number of the victim's wounds are also probative of the existence of premeditation and deliberation. *State v. Brown*, 306 N.C. 151, 174, 293 S.E.2d 569, 584, *cert. denied*, 459 U.S. 1080, 74 L. Ed. 2d 642 (1982).

Viewed in the light most favorable to the State, the evidence was clearly sufficient to establish that the defendant acted with premeditation and deliberation. The evidence showed that the victim was sitting in front of an apartment talking to two friends when he was shot. There was no evidence that the victim provoked the defendant in any manner. There was, however, evidence of ill will between the defend-

ant and the victim resulting from a previous altercation between the victim and Lionel McCray. Lionel McCray wanted to "get" the victim because the victim had hit him (Lionel) with a pistol. Prior to the killing, the evidence showed that the defendant and Lionel McCray carried on a conversation during which the defendant said that "he wanted to do it," and defendant was then handed a gun by Lionel McCray. Three witnesses identified the defendant as the killer. After the killing, the defendant bragged about how he "did it" and asked if the victim was dead. Furthermore, the evidence showed that the defendant shot the victim six times. Three of the wounds were to the head. Two of the three wounds to the head could have been fatal alone. At least one shot to the victim's head was fired with the muzzle of the gun pressed against the victim's skin. It is reasonable to infer that this wound, as well as many of the other wounds, was inflicted while the victim was lying helpless on the ground, thus showing a conscious decision on the part of the defendant to ensure that his victim was dead.

Each of the circumstances normally considered probative of premeditation and deliberation was present in this case. Any contradictions or discrepancies in the evidence were for the jury to resolve. Based on this evidence, we find sufficient evidence of premeditation and deliberation and conclude that the trial court did not err in denying defendant's motion to dismiss the first-degree murder charge.

III.

**[3]** By his third assignment of error, the defendant contends that the trial court erred by excluding the testimony of two defense witnesses, Officer J.J. Sturm and Harris Dixon, on the ground that the probative value of the testimony was substantially outweighed by the danger of unfair prejudice under Rule 403 of the Rules of Evidence.

On *voir dire*, Officer Sturm testified that sometime during the late evening hours of 22 August 1992, he was called to investigate a report of shots being fired at the corner of Raleigh and East Market Streets. During his investigation, Officer Sturm approached James Carelock, the victim in the instant case, and saw Carelock attempt to hide behind a parked truck. Officer Sturm confronted Carelock and checked him for weapons. Officer Sturm stated that he found no weapons on Carelock, but upon checking the area behind the truck, he found a .380 semiautomatic weapon. Officer Sturm further testified that he did not personally see Carelock with a weapon, and that the complaining witness was never located to identify the shooter.

**STATE v. McCRAY**

[342 N.C. 123 (1995)]

Harris Dixon, the manager of Raleigh Street Poolroom, testified on *voir dire* that during the late evening hours of 22 August 1992, he heard shots fired and walked outside the poolroom. Mr. Dixon stated that he saw James Carelock go behind a truck and that he saw something go over a nearby fence prior to Officer Sturm approaching Carelock. Mr. Dixon further testified that he did not see Carelock with a gun, and that he informed Officer Sturm that he did not want Carelock on his premises.

Whether or not to exclude evidence under Rule 403 of the Rules of Evidence is a matter within the sound discretion of the trial court and its decision will not be disturbed on appeal absent a showing of an abuse of discretion. *State v. Mason*, 315 N.C. 724, 731, 340 S.E.2d 430, 435 (1986). The defendant has failed to show that the trial court abused its discretion by excluding the testimony of witnesses Sturm and Dixon. The defendant argues that the testimony was relevant and should not have been excluded because it showed that Carelock had been involved in a shooting incident a few hours prior to his death, thus providing someone other than the defendant with a motive to kill him. This theory is pure conjecture. The proffered testimony did not reveal who, if anyone, was shot at; that Carelock did the shooting; or that anyone involved in the earlier incident was present at the English Village Apartments at the time of Carelock's murder. Further, there was no evidence that anyone had made threats against Carelock as a result of the shooting incident outside the poolroom. The proffered testimony was probative only of the fact that Carelock was present outside the Raleigh Street Poolroom around the time the shooting incident occurred. This information was already before the jury through another witness' testimony. The proffered testimony was, however, prejudicial to the State in that it suggested the victim was himself a violent person who attempted to elude a police officer and dispose of a weapon and who was ejected from a public establishment.

The record reveals that the trial court carefully weighed the probative value of the evidence against the possibility of unfair prejudice and specifically found that the probative value of the evidence was substantially outweighed by the risk of unfair prejudice. In light of the lack of probative value of the evidence offered by the defendant and the strong possibility of prejudice to the State, we conclude that the trial court properly exercised its discretion in excluding the testimony of witnesses Sturm and Dixon. This assignment of error is overruled.

**STATE v. McCRAY**

[342 N.C. 123 (1995)]

### IV.

**[4]** In his last assignment of error, the defendant contends that the trial court erred by sustaining the State's objection to testimony of Pauline McCray. Specifically, the defendant argues that Ms. McCray should have been allowed to testify that the description of the assailant provided by Janice Seagroves more accurately described her son, Lionel McCray, than her grandson, the defendant. We disagree.

Evidence that someone other than the defendant committed the crime charged is inadmissible unless it points directly to the guilt of the third party. *State v. Hamlette*, 302 N.C. 490, 501, 276 S.E.2d 338, 346 (1981). "Evidence which does no more than create an inference or conjecture as to another's guilt is inadmissible." *Id.* In the present case, the uncontradicted evidence showed that Lionel McCray did not leave Michael Roberson's apartment until after the shooting had occurred. Further, three witnesses positively identified the defendant, not Lionel McCray, as the man they saw shoot James Carelock. Pauline McCray, on the other hand, was not present at the English Village Apartments when the shooting occurred. Ms. McCray could neither testify as to what her son or the defendant was wearing nor testify as to their whereabouts on the night of the shooting. Ms. McCray's testimony clearly did not point directly to the guilt of another person. It merely allowed an inference or conjecture as to Lionel McCray's guilt. Thus, the trial court properly excluded the testimony of Pauline McCray. Accordingly, this assignment of error is overruled.

For the foregoing reasons, we conclude that the defendant received a fair trial, free of prejudicial error.

NO ERROR.