STATE OF NORTH CAROLINA v. CHARLES GLENN PARKER

No. 580PA85

(Filed 2 April 1986)

1. Criminal Law § 91 — superseding indictments — appropriateness and good faith — speedy trial

The trial court did not err in finding that superseding indictments against defendant for felonious possession of stolen property and felonious conspiracy to possess stolen property were appropriate and obtained in good faith, and the 120-day speedy trial period thus began to run at the time the superseding indictments were returned.

2. **Receiving Stolen Goods § 1— elements of possession of stolen property**

   The elements of the crime of feloniously possessing stolen property are (1) possession of personal property, (2) valued at more than $400.00, (3) which has been stolen, (4) the possessor knowing or having reasonable grounds to believe the property to have been stolen, and (5) the possessor acting with a dishonest purpose. N.C.G.S. § 14-71.1.

3. **Receiving Stolen Goods § 1— possession of stolen property—reasonable man standard**

   Since the possession of stolen property statute, N.C.G.S. § 14-71.1, includes language concerning a defendant's reasonable grounds to believe the items were stolen, the Legislature intended for the "reasonable man standard" to apply to that statutory offense.

4. **Receiving Stolen Goods § 5.1— possession of stolen property—reasonable grounds to believe property was stolen**

   The State presented sufficient evidence in a prosecution for possession of stolen property to show that defendant had reasonable grounds to believe that a vehicle he was driving was stolen where it tended to show that defendant was used as a go-between in the purchase of the stolen vehicle even though the buyer and seller were within a short distance from each other at a motel; defendant never received a title for the vehicle to present to the buyer; the buyer gave defendant only $800.00 to purchase a two-year-old sports car which appeared to be in good condition and worth a great deal more than $800.00; and when the police tried to stop the vehicle, defendant fled at a high rate of speed, eventually wrecked the car, and then attempted to escape on foot.

5. **Receiving Stolen Goods § 5— possession of stolen property—proof of dishonest purpose**

   The "dishonest purpose" element of the crime of possession of stolen property can be met by a showing that the possessor acted with an intent to aid the thief, receiver, or possessor of the stolen property, and the fact that defendant does not intend to profit personally by his action is immaterial.

6. **Receiving Stolen Goods § 5.1— possession of stolen property—sufficient evidence of dishonest purpose**

   The State's evidence in a prosecution for possession of stolen property was sufficient to show that defendant possessed a stolen automobile for a dishonest purpose where it tended to show that a used car dealer purchased the automobile with knowledge that it had been stolen; defendant knew or had reasonable grounds to believe the automobile was stolen; and defendant was driving the automobile at the dealer's request with the intent to assist the dealer in converting the automobile to the dealer's own use.

ON the State's petition for discretionary review pursuant to N.C.G.S. § 7A-31 of a decision of the Court of Appeals, 76 N.C. App. 508, 333 S.E. 2d 551 (1985), reversing the judgment entered by *Herring, J.,* at the 12 March 1984 Criminal Session of Superior Court, WAKE County, sentencing defendant to a term of imprison-

ment of three years upon his conviction of the offense of felonious possession of stolen property.

*Lacy H. Thornburg, Attorney General, by Wilson Hayman, Assistant Attorney General, for the State-appellant.*

*Bass, Willoughby & Haywood, by Gerald L. Bass, for defendant-appellee.*

MEYER, Justice.

The defendant and Arthur Medlin were indicted and jointly tried for the possession of a stolen automobile. The State presented evidence which tended to show that on 14 or 15 March 1983, Ione Simpson, the manager of the Journey's End Motel in downtown Raleigh, contacted the Raleigh Police Department concerning a guest at the motel. The guest in question had checked into the motel on 13 March 1983, registering under the name Willie Warren. He was staying in room 202. Simpson called the police again on the afternoon of 19 March 1983. Detective W. E. Ausley and Officer D. L. Clark of the Raleigh Police Department proceeded to the motel and spoke with Simpson. As a result of their conversation with Simpson, the police officers set up a stake-out in room 115 of the motel. Directly outside room 115 was a brown 1981 Datsun 280-ZX automobile with Texas license tags which Simpson stated was being driven by the occupant of room 202. At trial, the State introduced evidence showing that the vehicle had been stolen in Houston, Texas, on the evening of 7 March 1983. The owner, Miss Carlos Patrice Baker, purchased the car new in June of 1981 for $17,000.

Once stationed in the room, Detective Ausley checked the automobile's vehicle identification number (VIN) plate through the windshield and the federal inspection decal located in the door of the car. The federal inspection decal showed signs of having been tampered with. Later that evening, Phillip Holmes, an inspector with the License and Theft Section of the North Carolina Division of Motor Vehicles, was called to the scene, and he conducted additional checks on the vehicle. Holmes proceeded to inspect the secondary number on the firewall of the car and had that number checked through police computers. After making this inquiry, the officers obtained a warrant for the arrest of the subject in room

202 for possession of a stolen vehicle. The officers then continued surveillance of the automobile.

At approximately 10:30 a.m. on 20 March 1983, a white Camaro Z-28 driven by a man subsequently identified as Arthur Medlin, a local used car dealer, drove into the motel parking lot and parked next to the brown Datsun. The defendant got out of the right front seat and entered room 202. He stayed inside for approximately two to three minutes and then returned to the Camaro. The defendant stayed in the Camaro for about a minute and a half, and then returned to room 202. About three minutes later, the defendant returned to the Camaro, had a brief conversation with Medlin, got into the Datsun, and then drove out of the parking lot, followed by Medlin in the Camaro.

The man occupying room 202 of the Journey's End Motel was then arrested. He identified himself as Glen Dale Boyd. Boyd had $827.00 and change on his person when arrested.

Medlin was stopped by the police at an intersection approximately three-fourths of a mile from the motel. He was placed under arrest and transported to the Raleigh Police Department. A search of his person produced a Texas vehicle registration card for the Datsun. He did not, however, possess a title certificate to the Datsun.

The police also attempted to stop the defendant. He responded, however, by greatly increasing his speed, accelerating to approximately seventy to eighty miles per hour. He ran six red lights and, at one point, almost struck a station wagon. The defendant eventually left the city limits traveling south. Subsequently, he wrecked the vehicle near Garner and fled on foot. He was arrested shortly thereafter, and a search of his person incident to the arrest uncovered $5,903.42.

Following his arrest, Medlin made a statement to the police. Medlin stated that the previous week he had purchased a white Datsun 280-Z for $800.00 from a black male at a car sale. The seller told Medlin that he traveled all over the state buying cars. The man informed Medlin that he had a gold 280-Z which he desired to sell for $900.00. The man told Medlin that within the next two weeks, he would see him at another sale and bring the titles to both cars. The seller stated that his "driver" would be in con-

tact with him. On 19 March 1983, Medlin was informed by the "driver" that he was at the motel with the car. Medlin told him that he would pick up the car the next morning. Medlin stated that the next morning, he went to the defendant's house and asked him to drive the Datsun for him. When they got to the motel, Medlin gave the defendant $800.00 to give to the "driver" as payment for the vehicle.

The defendant's evidence established that at the time of the incident, he was serving an active federal prison sentence. From November 1982 until the time of his arrest, the defendant was involved in a pre-release program whereby he was allowed to work during the day while residing in a facility operated by an alternative to correction agency, ReEntry, Inc. On the weekend that he was arrested, the defendant was on a furlough for a home visit with his family. The defendant's wife testified that the defendant did not have $5,900 in his possession when he left the house on the morning of 20 March 1983. Based on this and other evidence, the defendant and Medlin were convicted of felonious possession of stolen property.

Defendant Parker and Medlin appealed their convictions to the Court of Appeals separately. In an unpublished opinion, the Court of Appeals found no error in Medlin's trial. *State v. Medlin*, 73 N.C. App. 180, 327 S.E. 2d 68 (1985).

On his appeal, the defendant raised two issues. He first argued that the prosecution failed to try the case within the time limit required by the Speedy Trial Act. The Court of Appeals rejected this argument. Second, he argued that the State's evidence was insufficient to support the conviction and that his motion to dismiss the charge should have been granted. The Court of Appeals agreed with this contention and reversed the defendant's conviction. We granted the State's petition for discretionary review. Since the defendant raised the Speedy Trial Act issue in the Court of Appeals and addressed it in his brief to this Court, we will also review that issue pursuant to Rule 16 of the North Carolina Rules of Appellate Procedure.

With regard to the Speedy Trial Act issue, the record indicates that the defendant was arrested on 20 March 1983. He was indicted for felonious possession of stolen property and

felonious conspiracy to possess stolen property on 25 April 1983.[1] Following the return of the true bills of indictment, the case was continued in Superior Court five times. One of the continuances was requested by the defendant. The other four were granted at the request of the State. Two were granted due to continuances granted to the codefendant, Medlin. One was granted due to the fact that the prosecutor assigned to the case was involved in the trial of an individual who was in custody. The other continuance was granted based on the fact that one of the State's witnesses would be involved in another trial.

On 28 December 1983, the defendant filed a motion to dismiss the indictment due to the failure of the prosecution to bring him to trial within the time limit prescribed by the Speedy Trial Act. N.C.G.S. § 15A-701, *et seq.* (1983 and Cum. Supp. 1985). On 3 January 1984, the State obtained new indictments against the defendant for the same offenses as those set out in the original indictments. Following a hearing on the defendant's motion to dismiss, Judge Coy Brewer issued an order that the defendant's motion be allowed and that the original indictments be dismissed without prejudice. In discussing the decision of whether to dismiss the indictments with or without prejudice, the trial court stated:

> In deciding that the indictments returned April 25, 1983 should be dismissed without prejudice, the Court did consider, among other matters, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissial [sic]; the impact of a reprosecution on the administration of Article 35 of Chapter 15A of the North Carolina General Statutes and the administration of justice. The Court is also of the opinion that the superseding indictments returned on January 3, 1984 against the Defendant begin a new 120 days for purposes of the application of the Speedy Trial requirements contained in G.S. 15-70 [sic] et seq. In reaching this decision the Court did find as a fact that the attainment of superseding indictments appeared to have been both appropriate and in good faith.

---

1. During the course of the trial, the State dismissed the conspiracy charges against both defendants.

The defendant argues that while the trial court correctly dismissed the original indictments, it erred by failing to order that the dismissal be with prejudice. The Court of Appeals held that this contention was without merit. We agree.

In pertinent part, the Speedy Trial Act provides:

The trial of the defendant charged with a criminal offense shall begin within the time limits specified below:

> (1) Within 120 days from the date the defendant is arrested, served with criminal process, waives an indictment, or is indicted, whichever occurs last.

N.C.G.S. § 15A-701(a1)(1) (1983 and Cum. Supp. 1985). N.C.G.S. § 15A-701(b) sets out certain periods which are to be excluded from the time computation.

[1] On 3 January 1984, the State obtained superseding indictments against the defendant for the crimes of felonious possession of stolen property and felonious conspiracy to possess stolen property. The record clearly shows that after excluding all periods permitted to be excluded, these indictments were obtained within the 120-day period set out in the Speedy Trial Act. In *State v. Mills*, 307 N.C. 504, 299 S.E. 2d 203 (1983), we held that when superseding indictments are appropriate and obtained in good faith, the 120-day period begins on the date the new indictments were returned. In his order, the trial judge found as a fact that the attainment of the superseding indictments appeared to have been appropriate and in good faith. The record fails to show that the defendant presented any evidence tending to show that the superseding indictments were inappropriate or not obtained in good faith. Absent such record evidence, we are unable to say that the trial judge erred in finding that the superseding indictments were appropriate and obtained in good faith. Therefore, under *Mills*, the 120-day speedy trial clock did not begin to run until those indictments were returned. The defendant's trial commenced within 120 days of that date. The defendant therefore cannot prevail on his claim that the State failed to try him within the time limit prescribed by the Speedy Trial Act. That portion of the opinion of the Court of Appeals overruling the defendant's assignment of error concerning the Speedy Trial Act is affirmed.

We take this opportunity to note the following. The trial judge found that the superseding indictments were appropriate and obtained in good faith. Although the trial court's order dismissing the original indictments stated that the dismissal was based on a violation of the Speedy Trial Act, this reason was erroneous in light of the fact that the speedy trial clock did not begin to run until the date of the return of the superseding indictments. Since N.C.G.S. § 15A-646 requires that the original indictments be dismissed at the defendant's arraignment on the superseding indictments, the result would be the same. Therefore, the trial judge's order dismissing them will not be disturbed. The rule is that a correct decision of a lower court will not be disturbed because the reason assigned for it is wrong, insufficient, or superfluous. The question on review of the decision in this Court is whether the ruling of the court below was correct, not whether the reason given for it is sound or tenable. *State v. Blackwell*, 246 N.C. 642, 99 S.E. 2d 867 (1957).

We now address the State's contention that the Court of Appeals erred in holding that the defendant's motion to dismiss the charge against him should have been granted due to insufficient evidence.

[2] It is well established that before the issue of a defendant's guilt may be submitted to the jury, the trial court must be satisfied that substantial evidence has been introduced tending to prove each essential element of the offense charged and that the defendant was the perpetrator. *State v. Hamlet*, 312 N.C. 162, 321 S.E. 2d 837 (1984); *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980). The elements of the crime of feloniously possessing stolen property are (1) possession of personal property, (2) valued at more than $400.00, (3) which has been stolen, (4) the possessor knowing or having reasonable grounds to believe the property to have been stolen, and (5) the possessor acting with a dishonest purpose. *State v. Davis*, 302 N.C. 370, 275 S.E. 2d 491 (1981). *See* N.C.G.S. §§ 14-71.1, 14-72 (1981 and Cum. Supp. 1985).

The State clearly introduced substantial evidence tending to show that on the morning of 20 March 1983, the defendant was in possession of a Datsun automobile which belonged to another. The State also produced substantial evidence tending to show that the

vehicle had been stolen from Miss Baker and that its value at the time of the possession exceeded $400.00.

With regard to the requirement that the accused know or have reasonable grounds to believe that the property was stolen, it appears that we have never had the opportunity to interpret this element in connection with the crime of possession of stolen property. However, we have addressed this element in connection with the crime of receipt of stolen property. In *State v. Davis*, 302 N.C. 370, 275 S.E. 2d 491, we noted that the only distinction between these two offenses lies in the act of possession versus the act of receipt. We therefore deem it appropriate to examine those cases construing this element in connection with the crime of receipt of stolen property.

The offense of receiving stolen goods is set out in N.C.G.S. § 14-71. Prior to 1975, the statute contained no express provision permitting the State to show merely that the person receiving the stolen property had "reasonable grounds to believe" that it had been taken or stolen. Instead, the statute's express language required proof that the accused knew the property had been stolen. However, our case law had long ago established that a defendant's "guilty knowledge" could be either actual or implied from circumstances tending to indicate that the party receiving the goods believed that they were stolen. *E.g., State v. Miller*, 212 N.C. 361, 193 S.E. 388 (1937); *State v. Spaulding*, 211 N.C. 63, 188 S.E. 647 (1936); *State v. Stathos*, 208 N.C. 456, 181 S.E. 273 (1935). However, our courts stated that to constitute the offense of receiving stolen property, the test was whether the defendant knew or *must have known* the goods were stolen, not whether a reasonable man would have suspected that they were stolen. *State v. Oxendine*, 223 N.C. 659, 27 S.E. 2d 814 (1943). *See State v. Stathos*, 208 N.C. 456, 181 S.E. 273; *State v. Grant*, 17 N.C. App. 15, 193 S.E. 2d 308 (1972). These earlier cases seem to have rejected the notion that a reasonable belief was equivalent to implied guilty knowledge. *But see State v. Ellers*, 234 N.C. 42, 45, 65 S.E. 2d 503, 505 (1951), where we stated, "Actual or constructive possession of property, *knowing or having reasonable grounds to believe* that it has been stolen, is sufficient to support a conviction for the crime of receiving." (Emphasis added.)

[3]   In 1975, N.C.G.S. § 14-71 was amended to expressly provide that an accused was guilty of the offense if he received property "knowing or having *reasonable grounds to believe*" that it was stolen. The inclusion of the language concerning a defendant's reasonable grounds to believe the items were stolen signifies a clear intent by the legislature to equate a defendant's reasonable belief with implied guilty knowledge. The offense of *possession* of stolen property, N.C.G.S. § 14-71.1, was established by the legislature in 1977. Since this statute also includes the language concerning a defendant's reasonable grounds to believe, it is obvious the legislature also intended for the "reasonable man standard" to apply to that statutory offense.

[4]   In this case, the State has failed to point to any direct evidence showing that the defendant had actual knowledge that the vehicle was stolen. However, we conclude that the State presented sufficient evidence to show that the defendant had reasonable grounds to believe that the Datsun was stolen. First, the mechanics of the transaction at the motel were quite unusual. The defendant was utilized as a go-between, even though Medlin and the man in room 202 were within a short distance of one another. Second, the defendant never received a title for the vehicle to present to Medlin. Third, Medlin gave the defendant only $800.00 to purchase a two-year-old sports car which appeared to be in good condition and worth a great deal more than the $800.00. In *State v. Haywood*, 297 N.C. 686, 256 S.E. 2d 715 (1979), we stated that a defendant-seller's knowledge or reasonable grounds to believe that property was stolen can be implied from his willingness to sell the property at a mere fraction of its actual value. Such knowledge or reasonable belief can also be implied where a defendant-buyer buys property at a fraction of its actual cost. Finally, we note that when the police attempted to stop the vehicle, the defendant proceeded to flee at high speed, eventually wrecking the car and attempting to escape on foot. We have recognized that an accused's flight is evidence of consciousness of guilt and therefore of guilt itself. *E.g., State v. Mash*, 305 N.C. 285, 287 S.E. 2d 824 (1982); *State v. Jones*, 292 N.C. 513, 234 S.E. 2d 555 (1977). Based on these circumstances, we conclude that the State presented substantial evidence tending to show that the defendant knew or had reasonable grounds to believe the vehicle was stolen.

The Court of Appeals reversed the defendant's conviction on the basis that the State failed to present any evidence concerning the fifth element of the offense — that the defendant possessed the stolen vehicle for a dishonest purpose. In reaching this conclusion, the Court of Appeals stated:

> There is no evidence that the defendant was being paid by Medlin or that he had any financial interest in the vehicle or that he expected to gain any financial reward for doing his friend a favor.

*State v. Parker*, 76 N.C. App. 508, 511, 333 S.E. 2d 551, 553 (1985). By its holding, the Court of Appeals has equated "dishonest purpose" with "financial interest, gain, or reward." We conclude that such an interpretation is erroneous, and we accordingly reverse this portion of the decision of the Court of Appeals.

Once again, it appears that we have never interpreted this element in connection with the crime of *possession* of stolen property. It is appropriate once again to examine those cases which have discussed this element in connection with the crime of *receiving* stolen property.

[5] We have previously noted that the element of receiving stolen property with a dishonest purpose is equivalent to receipt of stolen property with a felonious intent. *State v. Tilley*, 272 N.C. 408, 158 S.E. 2d 573 (1968). Our cases have clearly established that in order to successfully prosecute a defendant for receiving stolen property, it is not necessary for the State to show that he intended or expected to reap a personal profit from the act. If the receiver acted with an intent to assist the thief and all of the other elements of the crime are established, he would be guilty of receiving stolen property. *State v. Morrison*, 207 N.C. 804, 178 S.E. 562 (1935); *State v. Rushing*, 69 N.C. 29 (1873). As noted earlier, we have stated that the only distinction between the crimes of receiving stolen property and possession of stolen property concerns the act of receipt versus the act of possession. *State v. Davis*, 302 N.C. 370, 275 S.E. 2d 491. We now hold that the "dishonest purpose" element of the crime of possession of stolen property can be met by a showing that the possessor acted with an intent to aid the thief, receiver, or possessor of stolen property. The fact that the defendant does not intend to profit personally by his action is immaterial. It is sufficient if he intends

to assist another wrongdoer in permanently depriving the true owner of his property.

[6]   In this case, the State presented sufficient evidence tending to show that Medlin bought the Datsun knowing that it had been stolen. As noted previously, the prosecution presented substantial evidence that the defendant knew or had reasonable grounds to believe that the vehicle was stolen. There was also substantial evidence tending to show that the defendant was driving the vehicle at the request of Medlin, intending to assist Medlin in converting the property to Medlin's own use. We hold that the State presented substantial evidence tending to show that the defendant possessed the stolen automobile for a dishonest purpose. Accordingly, that portion of the decision of the Court of Appeals reversing the defendant's conviction due to insufficient evidence is also reversed.

In summary, we hold that the Court of Appeals did not err in overruling the defendant's assignment concerning the Speedy Trial Act. However, that portion of the opinion of the Court of Appeals reversing the defendant's conviction due to insufficient evidence is reversed, and the case is remanded to the Court of Appeals with instructions that the judgment of the Superior Court, Wake County, be reinstated.

Affirmed in part, reversed in part, and remanded.