An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1197
NORTH CAROLINA COURT OF APPEALS

Filed: 3 June 2014

STATE OF NORTH CAROLINA

v.                                    Pitt County
                                      No. 12CRS000156
DARRYL WAYNE DANIELS
      Defendant


Appeal by Defendant from judgment entered 26 February 2013 by Judge Quentin T. Sumner in Pitt County Superior Court. Heard in the Court of Appeals on 20 March 2014.

> *Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Charles G. Whitehead, for the State.*
>
> *Michael J. Reece, for Defendant-appellant.*


DILLON, Judge.


Darryl Wayne Daniels ("Defendant") appeals from a conviction for possession of stolen goods. For the following reasons, we find no error in Defendant's trial and remand for correction of a clerical error.

I. Background

On or about 23 January 2012, Defendant was indicted on one count of felonious possession of stolen goods. Defendant was tried on this charge at the 18 February 2013 Criminal Session of Pitt County Superior Court. The State's evidence tended to show that on 16 November 2011, Joseph Vick broke into the residence of Mr. Linwood Baker and stole approximately $200,000 in cash, coins, and some pistols. Justin Page was an accomplice to Mr. Vick in the theft. Mr. Baker had hidden the money in a closet, packaged in twenty bank envelopes, holding approximately $10,000 each.[1] As soon as he discovered the theft, Mr. Baker contacted police.

Mr. Vick and Mr. Page split the money evenly, each receiving ten envelopes or approximately, $100,000. Several days later, Mr. Vick was arrested. He initially lied to the police, stating that he only stole $100,000 from Mr. Baker and kept $80,000, giving only $20,000 to Mr. Page. Mr. Vick explained that he told this lie in hopes that Mr. Page would not get caught with the other $100,000 and he could get some share of it when he got out of jail. Ultimately, however, Mr. Vick confessed to the police that the amount he had stolen was

---

[1] Mr. Baker explained at trial that he had inherited approximately $251,000 in a certificate of deposit when his mother died in 2009.

$200,000. At trial, Mr. Vick and Mr. Baker consistently testified that they had stolen $200,000 from Mr. Baker, splitting the money evenly. As to his share, Mr. Page testified he spent $10,000 on drugs and hid the remaining $90,000 inside a shed on his neighbor's property.

Eventually, Mr. Page was arrested on 21 November 2011 for his involvement in the theft. Mr. Page's bond was set at $500,000, and he called Defendant, a bail bondsman, from the Pitt County Detention Center. Over a series of phone calls, Defendant and Mr. Page discussed the circumstances surrounding Mr. Page's charges and bail. In explaining his charges, Mr. Page told Defendant that he went to get a haircut and a guy that rode with him to the barbershop broke into a man's house and because he did not turn that individual in to police "[t]hey charged me with everything they charged him with[.]"

Defendant told Mr. Page that it would take $40,000 for him to get out on bond. Mr. Page offered Defendant $35,000 cash. Mr. Page explained that he wanted Defendant to come and get him out of jail and he would show him where the cash was hidden. Defendant refused, explaining that he would need the money before he agreed to bond Mr. Page out of jail. Defendant explained to Mr. Page that he should wait until the next day and

get his bond reduced for only $2,500. Mr. Page explained to Defendant that he wanted to get out that day, so he could go to the methadone clinic and not go through drug withdrawal symptoms. Mr. Page then explained in detail to Defendant the location of the hidden money in a shed behind his neighbor's house. Defendant asked if the money was on someone else's property and Mr. Page confirmed that it was but his neighbors were on vacation. Defendant told Mr. Page that was "a serious theft" and "breaking and entering" but Mr. Page explained that it was in an open trailer shed, with no door. After the second call, Mr. Page further explained where to find the money and Defendant agreed to go. Defendant again asked Mr. Page if there was anyone at his neighbor's house and Mr. Page reassured him that there was no one there and he would not have hidden the money there if they were. Mr. Page told Defendant that he had hidden in the shed nine envelopes, with $10,000 in each envelope, and for Defendant to get four of those envelopes and bail him out of jail. During the last phone call, Defendant talked to Mr. Page, who directed him to the location of the shed where the money was hid in. Defendant commented to Mr. Page that he was "just uncomfortable, man" and "this is like—this is like me trespassing on somebody else's property" but Mr. Page

reassured him that, "I'm giving you permission, man." After indicating that he had found something, Defendant told Mr. Page that he would be calling the jail to bail him out. Defendant did not speak to Mr. Page again that night. Cell phone mapping records showed that around 9:30 p.m. on the night in question Defendant's cell phone was in the area of the neighbor's shed.

The next day, on 22 November 2011, Detective Charles Mitchell, with the Pitt County Sheriff's Department, one of the investigators in the theft at Mr. Baker's house, received a call from attorney Earl Brown regarding Mr. Page. Detective Mitchell told Mr. Brown that only $20,000 was needed to make Mr. Baker whole and if the money was returned then Mr. Page's bond could be reduced. Mr. Brown then met with Mr. Page at the jail and told him of this fact. Mr. Page told Mr. Brown to speak with Defendant as "[h]e knew where all the money was." About an hour later, Mr. Brown delivered to Detective Mitchell two envelopes containing approximately, $10,000 each. Mr. Page's bond was reduced; Defendant posted bond for Mr. Page and he was released. Prior to his release, Mr. Page did not speak with Defendant and did not pay Defendant his premium for posting his bail.

The next day, on 23 November 2011, after he had got home, Mr. Page checked his neighbor's shed and discovered that all of

the $90,000 that he had hidden was gone. Mr. Page's electronic monitoring device, received as part of his release from jail, confirmed that he went to his neighbor's barn that morning. Mr. Page immediately called Mr. Brown explaining the situation and told him that Defendant was the "only person that knew where" the money was hidden and "[n]obody else took it." Mr. Page also called Defendant but Defendant told Mr. Page that he did not go to the barn that night.

The same day, detectives from the Pitt County Sheriff's Department came to Mr. Page's home. When police had agreed to release Mr. Page, they believed that only $100,000 had been stolen from Mr. Baker in the break-in based on Mr. Vick's statements. However, after listening to the phone calls between Mr. Page and Defendant, they believed that Mr. Page had received $100,000, as his share of the theft. Detectives searched the shed but did not find any money. Mr. Page told detectives that his share of the theft was $100,000 but explained how he had told Defendant where the money was located to make his bond to get out of jail and now the money was gone. Mr. Page testified that he had not told anyone but Defendant where he hid the money. A week after Mr. Page met with detectives, Defendant came to his home and demanded $2,500 for the bond premium and

Mr. Page paid him. At the close of the State's evidence, Defendant raised a motion to dismiss based on insufficiency of the evidence and his motion was denied by the trial court.

Defendant put forth the following evidence at trial: Terrance Smith, Defendant's business partner in his bail bondsman business, testified that on the evening of 21 November 2011, he received a three-way call from Defendant and wrote down some directions while Defendant talked to Mr. Page on the phone. Defendant wanted to go and see if there was $35,000 in a shed and use that money to bail Mr. Page out of jail. Mr. Smith drove Defendant to the location of the shed, based on the directions he had written down. Upon arriving, they both got out of the truck; and Mr. Smith went into the shed and retrieved two envelopes which he saw on the ground. The next day, Defendant called Mr. Smith and told him to take the money to Attorney Earl Brown, as they were working on a bail reduction for Mr. Page.

Attorney Earl Brown, testified that at some point on 22 November 2011, he received a voice message from Defendant saying that Mr. Page desired his services to seek a reduction in his bond. Mr. Brown called Detective Mitchell, the charging officer, to ask about the possibility of a bond reduction. He

was told that $20,000 was needed to make the victim whole. Mr. Brown then met with Mr. Page at the jail and told him that he needed to produce the $20,000 that belonged to the victim to reduce his bond. After some reluctance, Mr. Page hired Mr. Brown for the limited-purpose of bond reduction, and instructed him that Defendant would give him the money. Mr. Brown then gave Defendant a call regarding the money. Later that day, at the direction of Defendant, Mr. Smith arrived at Mr. Brown's office and delivered a package containing $20,000, which Mr. Brown promptly took to Detective Mitchell. The next day, Mr. Brown received a phone call from Mr. Page "ranting" and complaining that he had been robbed and someone had taken his money. At the end of the presentation of all the evidence, Defendant again raised his motion to dismiss, which was denied by the trial court.

On or about 26 February 2013, a jury found Defendant guilty of felonious possession of stolen goods. The trial court sentenced Defendant to a term of 6 to 8 months imprisonment. The trial court suspended this sentence, ordered Defendant to serve an active term of 30 days imprisonment, placed Defendant on 60 months of supervised probation, and ordered Defendant to pay a total of $72,089.50 in restitution. The trial court also

ordered Defendant to surrender his bail bondsmen license. Defendant gave notice of appeal in open court. On appeal, Defendant contends that (1) the trial court erred in denying his motion to dismiss, as the evidence was insufficient to support a conviction for felony possession of stolen goods; and (2) there is a clerical error in the judgment that should be remanded for correction.

## II. Sufficiency of the Evidence

Defendant contends that the trial court erred in denying his motion to dismiss as there was insufficient evidence to show (1) he knew or had reasonable grounds to believe that the money hidden in the shed may have been stolen or (2) that he had a "dishonest purpose" when he took the money from the shed.

The standard of review for a trial court's denial of a defendant's motion to dismiss for insufficiency of the evidence is well established:

> A defendant's motion to dismiss should be denied if there is substantial evidence of: (1) each essential element of the offense charged, and (2) of defendant's being the perpetrator of the charged offense. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.

*State v. Johnson*, 203 N.C. App. 718, 724, 693 S.E.2d 145, 148 (2010) (citations and quotation marks omitted). Additionally,

"[t]he Court must consider the evidence in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn from that evidence. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve." *State v. Phillpott*, ___ N.C. App. ___, ___, 713 S.E.2d 202, 209 (2011) (citation omitted), *disc. review denied*, 365 N.C. 544, 720 S.E.2d 393 (2012).

Defendant was convicted of felonious possession of stolen goods. The essential elements of felonious possession of stolen goods are: "(1) possession of personal property; (2) having a value in excess of [$1,000.00]; (3) which has been stolen; (4) the possessor knowing or having reasonable grounds to believe the property was stolen; and (5) the possessor acting with a dishonest purpose." *State v. Martin*, 97 N.C. App. 19, 25, 387 S.E.2d 211, 214 (1990); *see also* N.C. Gen. Stat. §§ 14-71.1,-72 (2011). Defendant challenges whether the State put for sufficient evidence of elements four and five of this offense.

A. Element Four: Knew or Had Reasonable Grounds to Know

Defendant contends that he did not know or did not have reasonable grounds to conclude that the money was stolen because no reasonable person would conclude that someone had $35,000

from a breaking and entering in Pitt County; Mr. Page never told him that it was stolen; Mr. Page freely discussed the money in front of third-parties at the jail, while talking with Defendant; and Mr. Page's hiding place for the money was no more unusual than Mr. Baker's hiding place in an old suitcase.

This Court has stated that "[w]hether the defendant knew or had reasonable grounds to believe that the [goods] were stolen must necessarily be proved through inferences drawn from the evidence." *State v. Brown*, 85 N.C. App. 583, 589, 355 S.E.2d 225, 229 (citation omitted), *disc. review denied*, 320 N.C. 172, 358 S.E.2d 57 (1987). In some cases, convictions for possession of stolen goods have been upheld "when knowledge was at issue have contained some evidence of incriminating behavior on the part of the accused." *State v. Allen*, 79 N.C. App. 280, 285, 339 S.E.2d 76, 79, *aff'd per curiam*, 317 N.C. 329, 344 S.E.2d 789 (1986).

Defendant's argument overlooks crucial direct and circumstantial evidence, and the reasonable inferences from that evidence, put forth by the State. Several of Mr. Page's statements to Defendant over the phone should have indicated to Defendant that the money in the shed was stolen: (1) Mr. Page told Defendant he was charged and in jail in connection with a

possible larceny and/or breaking and entering in a man's house; (2) his bond was set at $500,000; (3) he wanted to get out quickly to go to the methadone clinic; (4) he had recently hidden a large amount of money, $90,000, in his neighbor's shed; (5) he told Defendant he had to trespass on the neighbor's property to get the money; (6) he said that he did not want a friend or relative to retrieve the money for him because he did not "want them to know nothing about nothing[;]" (7) he wanted Defendant to use $40,000 of that money to bail him out that night, rather than staying in jail overnight and potentially having his bond reduced at his first appearance; (8) he explained to Defendant that the money was not on his property because "I don't want it on my property. You know what I'm saying[;]" (9) he explained to Defendant that he would not have hidden the money in the shed unless his neighbors were gone on vacation; and (10) he told Defendant that the money belonged to his brother, explaining, "you know what I mean."  It could be reasonably inferred from this evidence that Mr. Page had recently been involved in a breaking and entering serious enough to warrant a bail of $500,000; he was a drug addict but did not hesitate to pay $35,000 to potentially get out of jail that day; he had recently hidden a large amount of money on his neighbor's

property because he did not want it in his immediate possession and did not want his neighbors or family to know about it; he encouraged Defendant to trespass on the neighbor's property to retrieve the money for his bail; and he gave an inconsistent story about the ownership of the money saying first that it was his money then it was his brother's money. *See State v. Haskins,* 60 N.C. App. 199, 201-02, 298 S.E.2d 188, 189-90 (1982) (in finding that the defendant had or reasonably should have had knowledge regarding the stolen nature of the guns, the Court noted the defendant's inconsistent stories on how he obtained the guns).

Defendant's own statements regarding his apprehension to retrieve the money from the shed show that he was aware that the retrieval of this money involved some "incriminating behavior" on the part of Mr. Page. *See Allen*, 79 N.C. App. at 285, 339 S.E.2d at 79. *See also State v. Weakley,* 176 N.C. App. 642, 652, 627 S.E.2d 315, 322 (2006) (concluding that the circumstantial evidence tended to show that the defendant knew or should have known the goods were stolen after considering a witness's and the defendant's incriminating statements regarding the circumstance and nature of the stolen goods). When viewed in the light most favorable to the State, Defendant's own

statements and his conversations with Mr. Page and the reasonable inferences therefrom, show that Defendant knew or reasonably should have known that the money he retrieved had been stolen by Mr. Page. *See Martin*, 97 N.C. App. at 25, 387 S.E.2d at 214.

### B. Element Five: Dishonest Purpose

Defendant contends that there was no evidence of a dishonest purpose in him taking the money because as soon as he learned that it was stolen he turned it in to authorities.

"[W]hether someone is acting with a dishonest purpose is a question of intent." *Brown*, 85 N.C. App. at 586, 355 S.E.2d at 228. Additionally,

> the "dishonest purpose" element of the crime of possession of stolen property can be met by a showing that the possessor acted with an intent to aid the thief, receiver, or possessor of stolen property. The fact that the defendant does not intend to profit personally by his action is immaterial. It is sufficient if he intends to assist another wrongdoer in permanently depriving the true owner of his property.

*State v. Parker*, 316 N.C. 295, 305-06, 341 S.E.2d 555, 561 (1986).

Contrary to Defendant's contentions, the direct and circumstantial evidence, and reasonable inferences from that evidence, put forth by the State were sufficient to show that

Defendant took possession of the stolen money with a dishonest purpose. As noted above, there was substantial evidence put forth by the State to show that Defendant knew or reasonably should have known that the money was stolen. Circumstantial evidence put forward by the State showed that Defendant went to the shed at Mr. Page's direction; got the stolen $90,000 from the shed; and turned at least part of the money, $20,000 over to authorities, so that Mr. Page, the person that originally assisted in stealing the money, could make bail; and kept the remaining stolen money, $70,000. Whether it was $90,000, $70,000, or the $20,000 turned over to Detective Mitchell, the evidence shows that Defendant intended to keep or use this money to the detriment of its true owner, Mr. Baker. As evidence showed that Defendant acted with a dishonest purpose in keeping stolen money, and, at least by aiding Mr. Page, the person responsible for the theft, in posting bail, this would be sufficient under *Parker*, to show that his intent was "to assist another wrongdoer in permanently depriving the true owner of his property." 316 N.C. at 305-06, 341 S.E.2d at 561.

Defendant further argues that under the State's theory that if Defendant had a dishonest purpose in turning the money over for a bail reduction "a person who found money, learned it was

stolen, turned it in and received a reward would be guilty of possession of stolen goods since by receiving the reward they received a benefit." Defendant's hypothetical in support of his argument is based only on *his* arguments at trial, and the evidence *he* put forward, and views the evidence in the light most favorable to *Defendant*; and, therefore, this argument has no merit in our analysis where we are to view the evidence in the light most favorable to the State.

In sum, the evidence, when viewed in the light most favorable to the State, *see Phillpott*, ___ N.C. App. at ___, 713 S.E.2d at 209, showed that the State put for sufficient evidence to establish these elements of felonious possession of stolen goods. We hold that the trial court properly denied Defendant's motions to dismiss. *See Johnson*, 203 N.C. App. at 724, 693 S.E.2d at 148.[2]

## III. Clerical Error

Both Defendant and the State point us to a possible clerical error in the judgment regarding the term of Defendant's probation. N.C. Gen. Stat. § 15A-1343.2(d)(4)(2011) states that

---

[2] Because we find sufficient evidence of each contested element of felonious possession of stolen goods, we need not address Defendant's argument that the State also did not provide sufficient evidence to show that the goods were stolen pursuant to felonious breaking and entering.

"[u]nless the court makes specific findings that longer or shorter periods of probation are necessary[,]" a defendant convicted of a felony and sentenced to intermediate punishment should receive a term of probation no greater than 36 months. This statute goes on to state that "[i]f the court finds at the time of sentencing that a longer period of probation is necessary, that period may not exceed a maximum of five years[.]" N.C. Gen. Stat. § 15A-1343.2(d). Here, in determining that Defendant's probationary term would be for five years, the trial court found "that the extent of the probation is due directly to rehabilitation of the Defendant." On the written judgment, however, while Defendant's term of probation is indicated to be for 60 months, the Court failed to indicate that its finding that a longer period of probation was necessary pursuant to N.C. Gen. Stat. § 15A-1343.2(d), as it had found in open court. Both Defendant and the State say this discrepancy amounts to a clerical error in the judgment, and we agree. *See State v. Smith*, 188 N.C. App. 842, 845, 656 S.E.2d 695, 696-97 (2008) (stating that "[w]hen, on appeal, a clerical error is discovered in the trial court's judgment or order, it is appropriate to remand the case to the trial court for correction

because of the importance that the record speak the truth"). As such, we remand for correction of the clerical error. *See id.*

For the foregoing reasons, we find no error in Defendant's trial and remand for correction of a clerical error.

NO ERROR; REMAND FOR CORRECTION OF A CLERICAL ERROR.

Judge STROUD and Judge HUNTER, JR. concur.

Report per Rule 30(e).