IN THE SUPREME COURT OF NORTH CAROLINA

No. 32A25

Filed 12 December 2025

STATE OF NORTH CAROLINA

v.

MACK VERNON BRACEY

Appeal pursuant to N.C.G.S. § 7A-30(2) (repealed 2023) from the decision of a divided panel of the Court of Appeals, 297 N.C. App. 136 (2024), affirming judgments entered on 31 January 2023 by Judge Jason C. Disbrow in Superior Court, Brunswick County. Heard in the Supreme Court on 10 September 2025.

*Jeff Jackson, Attorney General, by James W. Doggett, Deputy Solicitor General, and Laura Howard, Chief Deputy Attorney General, for the State-appellee.*

*Warren D. Hynson for defendant-appellant.*

BARRINGER, Justice.

This case presents a single question: Was there substantial evidence that a criminal defendant knew or had reasonable grounds to believe the gun in his possession was stolen? We answer in the affirmative. Accordingly, we affirm the decision of the Court of Appeals affirming the trial court's denial of defendant's motion to dismiss his charge of possession of a stolen firearm.

## I.    Facts

The State's evidence tended to show the following: In the parking lot of a hotel known by law enforcement as a "hub for illegal activity," Officer Hannah Jackson ran

the license plate of a station wagon and determined that the car belonged to defendant Mack Bracey, a convicted felon who had outstanding arrest warrants. Officer Jackson monitored the area for several hours until she saw defendant walk out of the hotel and get into the car's driver's seat. Once Officer Jackson's partner arrived, Officer Jackson approached the passenger-side door and asked defendant to get out of the car. Defendant said, "I'm not getting out of the car" and began "reaching around" in an apparent attempt to "try[ ] to hide things." When Officer Jackson's partner went to open the driver-side door, defendant "shut [the door], put the car in drive, and took off." The officers gave chase.

Defendant sped through red lights and stop signs, drove headlong into opposing lanes of travel, evaded police roadblocks, and plowed over curbs, medians, and grass. He drove dozens of miles per hour (mph) over posted speed limits, reaching 90 mph in a 35 mph zone and over 100 mph on a highway. He raced past pedestrians, going around 50 mph in a shopping center's busy parking lot and zipping at 70 mph past a man walking his dog in a residential neighborhood. After being forced onto a dirt road, defendant crashed his car into two trees—and then fled on foot through a swampy area until he encountered brush "so dense that he couldn't run anymore." Officers arrested defendant, read him his *Miranda* rights, and placed him in a patrol car.

When asked why he fled, defendant responded that he had been "trying to get [in] a hit" of cocaine and "wouldn't have run from" the officers if they "had just let

him get . . . his hit in." However, Officer Jackson suspected otherwise, because she had seen an empty Sticky-brand gun holster[1] in defendant's car near the driver's seat. Although she had not yet found a gun, Officer Jackson decided to ask defendant "a trick question":

| | |
|---|---|
| **Officer Jackson:** | "We found the gun." |
| **Defendant:** | "Where?" |
| **Officer Jackson:** | "In the woods . . . where you tossed it." |
| **Defendant:** | "Oh. There ain't no gun." |

This exchange convinced Officer Jackson that a gun must have been "somewhere." Officer Jackson also asked defendant if there was anything in his hotel room that they should know about, to which defendant responded "No." Officers took defendant to the jail and impounded his wrecked car.

After obtaining a warrant, officers searched defendant's hotel room and found .38 Special ammunition, pills, and a digital scale. Officers also searched defendant's car at the impound lot. During this search, Officer Jackson "noticed that on the left side of the steering wheel where you would normally turn your headlights on and off, it was a little loose looking." The panel "popped open very easily," revealing a loaded .38 Special revolver inside. A run of the gun's serial number showed that it was stolen.

Defendant was tried for fleeing to elude arrest, possession of a firearm by a

---

[1] A Sticky holster is a slender, clipless foam pocket holster coated in a nonslip material. *What Is a Sticky Holster?*, Sticky Holsters, https://stickyholsters.com/what-is-a-sticky-holster/ (last visited Nov. 18, 2025).

felon, and possession of a stolen firearm. Defendant moved to dismiss the firearm charges for insufficient evidence. The trial court denied the motion, and defendant was convicted on all three charges.

On appeal, defendant argued that the State's evidence was insufficient to establish that he knew or had reasonable grounds to believe the firearm was stolen. *State v. Bracey*, 297 N.C. App. 136, 137 (2024). The Court of Appeals disagreed. Applying the substantial evidence standard, the majority concluded that a rational juror could have found that defendant knew or had reasonable grounds to believe the gun was stolen. *Id.* at 141–42. Three main pieces of evidence supported this conclusion: (1) defendant fled, (2) the gun was hidden, and (3) defendant lied about having the gun and ammunition. *Id.* at 140–41.

The Court of Appeals was divided on this point. The dissenting judge would have held that the State failed to present sufficient evidence that defendant knew or had reasonable grounds to believe the firearm was stolen. *Id.* at 144 (Murphy, J., dissenting). Defendant's flight was, in the dissent's view, no indication that he knew or had reasonable grounds to believe the gun was stolen; rather, defendant had numerous reasons to flee—including to evade a felon-in-possession-of-a-firearm charge—and his flight should not be considered substantial evidence of the "know[ledge] element of *every* crime which he could plausibly be charged with committing that day." *Id.* (emphasis added). As for the fact that the gun was hidden, the dissent believed this circumstance alone did not show defendant's guilty

knowledge, citing a previous Court of Appeals decision that had held that storing a gun in a closet was, on its own, insufficient to show a defendant knew or had reasonable grounds to believe that the gun was stolen. *Id.* at 142–43 (citing *State v. Wilson*, 203 N.C. App. 547, 555 (2010)).

Defendant appealed based on the dissent at the Court of Appeals. N.C.G.S. § 7A-30(2) (repealed 2023).

## II. Standard of Review

On a motion to dismiss for insufficient evidence, the trial court must determine whether there is substantial evidence of "each essential element of the crime." *State v. Winkler*, 368 N.C. 572, 574 (2015) (quoting *State v. Mann*, 355 N.C. 294, 301, *cert. denied*, 537 U.S. 1005 (2002)). On appeal, this determination is reviewed de novo. *State v. Crockett*, 368 N.C. 717, 720 (2016).

As a "general rule," a motion to dismiss should be denied if there is "*any* evidence" that "tend[s] to prove" each element or "reasonably conduces to [each element's] conclusion as a fairly logical and legitimate deduction" beyond mere "suspicion or conjecture." *State v. Blagg*, 377 N.C. 482, 488 (2021) (emphasis omitted) (quoting *State v. Earnhardt*, 307 N.C. 62, 66 (1982)). Relevant evidence is sufficiently substantial if it is enough to "persuade a rational juror" of the defendant's guilt. *Winkler*, 368 N.C. at 574 (quoting *Mann*, 355 N.C. at 301). Accordingly, the "substantial evidence" standard requires only that there be "more than a scintilla of

evidence."[2] *State v. Powell*, 299 N.C. 95, 99 (1980); *see State v. Fritsch*, 351 N.C. 373, 379 (2000) ("[T]he trial court should be concerned only about whether the evidence is sufficient for jury consideration, not about the weight of the evidence."), *cert. denied*, 531 U.S. 890 (2000).

Evidence must be viewed "in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *State v. Barnes*, 334 N.C. 67, 75 (1993). Moreover, "it is appropriate . . . to make 'inferences on inferences,'" *State v. Dover*, 381 N.C. 535, 547 (2022) (quoting *State v. Childress*, 321 N.C. 226, 232 (1987)), as "[t]his is the way people often reason in everyday life," *Childress*, 321 N.C. at 232. Thus, even circumstantial evidence that "does not rule out every hypothesis of innocence" may suffice to persuade a rational juror of a defendant's guilt. *Id.* It is not proper for the court to consider "an [alternative] explanation for [the defendant's] conduct." *Winkler*, 368 N.C. at 582. This is true whether the explanation portrays the defendant as entirely innocent, *id.*, or merely guilty of a different crime, *see State v. Ambriz*, 286 N.C. App. 273, 280 (2022) (recognizing that when the "same substantial evidence" supports convictions for two different offenses, it is improper to dismiss

---

[2] To be clear, "[t]he terms 'more than a scintilla of evidence' and 'substantial evidence' are . . . the same." *State v. Gillard*, 386 N.C. 797, 832 (2024) (quoting *Earnhardt*, 307 N.C. at 66); *accord State v. Tucker*, 380 N.C. 234, 237 (2022) ("Substantial evidence is the same as more than a scintilla of evidence."). Regardless of which term a court employs, all that is required is evidence that is "existing and real, not just seeming or imaginary." *Gillard*, 386 N.C. at 832 (quoting *Earnhardt*, 307 N.C. at 66).

either offense), *disc. review denied*, 890 S.E.2d 918 (N.C. 2023) (order).[3] Such "[c]ontradictions and discrepancies . . . are for the jury to resolve"—not the trial court. *Barnes*, 334 N.C. at 75; *see Tucker*, 380 N.C. at 240 (holding that "[t]he evidence need only be sufficient to support a reasonable inference" of guilt—regardless of whether the evidence "could [also] support different inferences").

The court cannot "weigh[ ] the evidence, consider[ ] . . . evidence that is not favorable to the State, or contemplat[e] what evidence the State should have presented." *Tucker*, 380 N.C. at 240 (extraneities omitted). If evidence of each element is substantial (that is, more than a scintilla), the case should be sent to the jury, as it "is for *the jury* to decide" whether the defendant "is *actually* guilty" beyond a reasonable doubt. *Blagg*, 377 N.C. at 489 (emphases added) (quoting *Fritsch*, 351 N.C. at 379).

## III.    Analysis

To secure a conviction for felony possession of a stolen firearm, the State must prove that a (1) stolen (2) firearm (3) was possessed (4) with a dishonest purpose (5) by a defendant who knew or had reasonable grounds to believe that it was stolen. N.C.G.S. §§ 14-71.1, 14-72(b)(4), (c) (2023); *State v. Davis*, 302 N.C. 370, 373 (1981). In the Court of Appeals, the dissent argued that only the fifth element, knowledge or reasonable grounds to believe that the gun was stolen, was not supported by sufficient

---

[3] Although not controlling, this Court finds the Court of Appeals' reasoning persuasive.

evidence. *Bracey*, 297 N.C. App. at 144 (Murphy, J., dissenting). Our review is therefore limited to this issue. N.C. R. App. P. 16(b).

The State presented evidence that defendant fled from police, lied about having a gun, and hid the gun—but not its holster. We hold that this evidence was sufficient to allow a rational juror to infer that defendant knew or had reasonable grounds to believe the gun was stolen.

We have long recognized that "an accused's flight is evidence of consciousness of guilt and therefore of guilt itself." *State v. Parker*, 316 N.C. 295, 304 (1986). Defendant's flight is a factor from which a rational juror could infer that defendant knew or had reasonable grounds to believe the gun was stolen. That defendant fled with such intensity—leading police on a reckless high-speed chase and, after crashing his car, running into a swamp until he encountered brush "so dense that he couldn't run anymore"—adds even greater import to this factor. *See State v. Jones*, 292 N.C. 513, 527 (1977) ("[T]he degree or nature of the flight is of great importance to the jury in weighing its probative force.").

While it is true that defendant had several additional reasons to flee, such as avoiding culpability for possessing a firearm as a felon, it is nevertheless consistent with our standard of review to consider his flight as evidence that he knew or had reasonable grounds to believe the gun was stolen. To survive dismissal, "[t]he evidence need only be sufficient to support a reasonable inference" that defendant knew or had reasonable grounds to believe the gun was stolen. *Tucker*, 380 N.C. at

240. This is true regardless of whether the evidence could also support "different inferences." *Id.* Accordingly, the State "need not eliminate 'every hypothesis of' " why defendant fled. *Winkler*, 368 N.C. at 583 (quoting *State v. Thomas*, 350 N.C. 315, 343, *cert. denied*, 528 U.S. 1006 (1999)).

Rather, when a defendant moving for dismissal offers "an [alternative] explanation for his conduct," *id.* at 582, it is not proper for the court to consider the alternative explanation. When, as here, such an alternative explanation is "evidence . . . not favorable to the State," *Tucker*, 380 N.C. at 240, that evidence is precluded from consideration by our standard of review. Because a rational juror *could* view flight as an indication that defendant knew or had reasonable grounds to believe the gun was stolen, this evidence counsels against dismissal.[4]

Beyond defendant's flight, other evidence provides additional support for a finding that defendant knew or had reasonable grounds to believe the gun was stolen. For instance, evidence clearly indicates that defendant attempted to conceal the presence of the gun. When asked by law enforcement if he had a gun, defendant lied, saying "there ain't no gun" even though there was. Furthermore, the gun itself was

---

[4] In the court below, the dissent argued that when multiple crimes may have been committed, "substantial evidence that [a] [d]efendant is guilty of *some* crime is *not* substantial evidence that he committed [a] particular crime." *Bracey*, 297 N.C. App. at 144 (Murphy, J., dissenting). This is an incorrect statement of law. If, for example, a defendant with two stolen laptops in his backpack fled, a rational juror could view his flight as evidence that he knew or had reasonable grounds to believe that *both* of the laptops were stolen. *See State v. Friend*, 164 N.C. App. 430, 439–41 (2004) (holding that when a variety of stolen items were hidden together in one location, this provided evidence that the defendant knew or had reason to believe that *each* of the items was stolen).

hidden in an empty space behind a plastic panel under his car's steering wheel.[5] A rational juror *could* view defendant's attempts at concealment as indications that defendant knew or had reasonable grounds to believe the gun was stolen. That defendant had additional reasons to conceal the gun does not lower the import of this evidence when viewed in the light most favorable to the State.

Lastly, defendant did *not* hide the holster. Defendant's decision to hide the gun but not the holster indicates he was aware that *the gun itself* was incriminating. Had defendant simply been trying to avoid a felon-in-possession-of-a-firearm charge, it is likely he would have also hidden the holster—an item clearly signifying firearm possession. Yet he did not do so. Why? A rational juror *could* infer defendant was instead trying to hide a *gun* that he knew or had reasonable grounds to believe was stolen.[6]

The State presented evidence that defendant made a spirited attempt to flee

---

[5] The dissent in the court below characterized this act as "mere storage" and likened caching a gun behind a car's steering-wheel panel to placing a shotgun in a closet. *Bracey*, 297 N.C. App. at 143 (Murphy, J., dissenting) (drawing analogies to *Wilson*, 203 N.C. App. at 548–50, 555). We disagree with this characterization. Cars contain myriad places designed for "mere storage" of items, such as glove compartments, center consoles, cupholders, door pockets, seat-back pockets, and trunks. Instead of using any of these storage spaces, defendant dislodged, and then replaced, a permanently affixed plastic panel under the steering wheel. Such an action is not akin to storing an item in a bedroom closet; it is more akin to stashing an item in one of the room's air vents and replacing the grille.

[6] We note also that, given defendant's felon status, there was no legal way for him to obtain the gun. *See* 18 U.S.C. § 922(d)(1). A rational juror could therefore infer that defendant was aware that one who willingly *provided* him the gun illegally would have a greater likelihood of having *obtained* the gun illegally—such as by theft. *C.f. Parker*, 316 N.C. at 304 (noting that, when combined with the defendant's flight, "unusual" circumstances surrounding the sale of a stolen car, including the use of a middleman and an exceedingly low sale price, constituted substantial evidence that the defendant knew the car was stolen).

from police, leading them on a high-speed chase, crashing his car, and running deep into a swamp until he was ensnared by brush "so dense that he couldn't run anymore." The State also presented evidence that defendant hid the gun behind a plastic panel under his steering wheel and, despite leaving the holster in plain sight, told police "[t]here ain't no gun." When viewed in the light most favorable to the State, drawing all reasonable inferences in the State's favor, this is substantial evidence that *could* lead a rational juror to believe defendant knew or had reasonable grounds to believe the gun was stolen. That a rational juror could also view this behavior as derivative of a compulsion to avoid a felon-in-possession-of-a-firearm charge is immaterial because, as we have observed, the State "need not eliminate 'every hypothesis'" for why defendant took these actions. *Winkler*, 368 N.C. at 583 (quoting *Thomas*, 350 N.C. at 343).

Because the State presented substantial evidence supporting the possession-of-a-stolen-firearm charge, it was proper for the trial court to deny defendant's motion to dismiss.

## IV. Conclusion

After careful review, considering the evidence in the light most favorable to the State, we conclude that the State presented evidence sufficient for a rational juror to find that defendant knew or had reasonable grounds to believe the gun was stolen. Accordingly, we affirm the decision of the Court of Appeals.

AFFIRMED.

Justice EARLS dissenting.

I dissent from the majority's holding that the State introduced sufficient evidence to show that Mr. Bracey knew or had reasonable grounds to believe that the .38 Special revolver in his possession was stolen.

On 31 January 2022, after crashing his vehicle and fleeing on foot, Mr. Bracey was apprehended by Shallotte Police Officer Hannah Jackson and her partner. During an initial search of Mr. Bracey's vehicle, Officer Jackson found an empty firearms holster. When questioned and falsely told that police had found a gun, Mr. Bracey asked, "Where?" and then denied having any firearm. After acquiring a search warrant for the vehicle the next day, Officer Jackson discovered a loaded .38 Special revolver hidden in a void behind a loose panel to the left of the steering wheel, with its serial number intact. A database search revealed that the firearm had been reported stolen from Columbus County. Police also found .38 caliber ammunition in Mr. Bracey's hotel room but conducted no fingerprint analysis on the weapon or the bullets.

To successfully convict a person for felony possession of a stolen firearm, the State must prove, by substantial evidence, that a (1) stolen (2) firearm (3) was possessed (4) with a dishonest purpose (5) by a defendant who knew or had reasonable grounds to believe that it was stolen. N.C.G.S. §§ 14-71.1-72(b)(4), (c) (2023); *State v. Davis*, 302 N.C. 370, 373 (1981). Plus, "substantial evidence [must be] introduced tending to prove each essential element of the offense charged and that the defendant

was the perpetrator." *State v. Parker*, 316 N.C. 295, 302 (1986). Specifically, this substantial evidence standard "mean[s] that the evidence must be existing and real, not just seeming or imaginary." *State v. Powell*, 299 N.C. 95, 99 (1980).

The knowledge element of being in possession of a stolen good is typically proved when there is a transactional imbalance or some other inconsistency that permits an inference that the person in possession knew or should have known that the item was stolen. For example, in *State v. Parker*, the defendant was selling a car, a two-year old sports car in good condition, for just $800, without a title, at a motel. In these circumstances, the defendant reasonably should have known the car was stolen. *See Parker,* 316 N.C. at 304. In that case, the defendant's behavior fleeing from police was also evidence of consciousness of guilt, where the only crime he could have been guilty of was possession of a stolen vehicle. *See id.*

While not binding on this Court, it is illustrative that the Court of Appeals has concluded that knowledge of stolen goods can be inferred from incriminating behavior associated with the goods. In *State v. Taylor*, the defendant was charged *inter alia* with felony possession of a stolen firearm. 64 N.C. App. 165, 165 (1983), *rev'd in part* and *aff'd in part*, 311 N.C. 380 (1984). The State relied on evidence of the defendant's suspicious actions after being confronted by a pedestrian to show knowledge that the firearm was stolen. *Id.* at 166. The defendant there removed the firearm from his coat, stooped near a car, and attempted to surreptitiously hide or dispose of the firearm by throwing it into nearby bushes. *Id.* at 169.

Similarly, in *State v. Wilson*, the fact that the defendant told his co-defendant to throw the gun from the car as they were fleeing from police was considered sufficient evidence of knowledge that the gun was stolen. *See Wilson,* 106 N.C. App. 342, 347–48 (1992). In *State v. Walker*, the defendant removed the item's serial number to make it untraceable. 86 N.C. App. 336, 341 (1987). Though the defendant's accomplice claimed that the gun belonged to him, the true owner identified the item as the one that recently had been stolen from his home. From this evidence, the court determined that the scratching off the serial number constituted evidence that the item was contraband, thereby meeting the "something more" test necessary to establish the defendant's custody and control over stolen property and, by reasonable inference, his knowledge that the property was stolen. *Id.* at 341.

In this case, no evidence shows how Mr. Bracey acquired the gun. Unlike the defendants in the Court of Appeals' precedents cited above, there is no associated incriminating behavior involving the gun by Mr. Bracey to suggest that he knew the gun was stolen. No serial number was obliterated, as in *Walker*. Mr. Bracey did not dispose of the gun during flight as the defendants did in *Wilson* or *Taylor*. Even with regard to storage, there is no evidence "whether . . . storage [of the gun] took place during the flight," *State v. Bracey*, 297 N.C. App. 136, 144 (2024) (Murphy, J., dissenting), or even after Mr. Bracey crashed his vehicle. Lastly, no DNA evidence was collected from the gun or the ammunition found by police.

It is also significant that the only evidence supporting the contention that Mr.

Bracey knew the gun was stolen, namely, that he fled from the scene and the gun was hidden, could just as easily be explained by the fact that he knew he had a felony conviction and thus illegally possessed a gun. In short, if Mr. Bracey were not a felon, and possession of a stolen firearm was the only charge before the jury, the evidence of his flight and concealment of the gun possibly could be substantial evidence that he knew the gun was stolen because that would be the most reasonable explanation for his behavior. But where he is charged with multiple offenses, hiding the gun and fleeing arrest are some evidence of knowledge that he is criminally liable for *something,* but these facts are not substantial evidence that he knew the firearm in his possession was stolen.

The Court of Appeals suggested that because the gun was hidden in a void behind the steering wheel and not found with or in the holster, Mr. Bracey "surreptitiously" hid the gun. *State v. Bracey*, 297 N.C. App. 136, 141 (2024). The majority, however, takes this a step further, and contends that the fact that the holster was not hidden is proof that Mr. Bracey *knew* the gun was stolen. *See* majority *supra* Part III. This is a misplaced exercise of stacking inference upon inference, which we have previously ruled is not appropriate in these circumstances. *See State v. Voncannon,* 302 N.C. 619, 623 (1981) (quoting *State v. Maines, 301* N.C. 669, 676 (1981) ("Inference may not be based on inference. Every inference must stand upon some clear or direct evidence, and not upon some other inference or presumption.").

The role of this Court when evaluating the evidence for a motion to dismiss is

to assess holistically all the evidence in the light most favorable to the State, and to determine that there is a logical link between the evidence and the conclusion that is being drawn. *State v. Everett*, 328 N.C. 72, 77 (1991).  It is a long-standing principle of law that a motion to dismiss for insufficiency of the evidence should be allowed when there is some evidence but the evidence only creates "a suspicion or conjecture as to . . . the commission of the offense." *Powell*, 299 N.C. at 98 (first citing *State v. Cutler*, 271 N.C. 379 (1967); and then citing *State v. Guffey*, 252 N.C. 60 (1960)). "This is true even though the suspicion so aroused by the evidence is strong." *Id.* (first citing *State v. Evans*, 279 N.C. 447 (1971); and then citing *State v. Chavis*, 270 N.C. 306 (1967)). In *Powell*, this Court also explained that:

> In passing on the motion, evidence favorable to the State is to be considered as a whole in order to determine its sufficiency. This is especially true when the evidence is circumstantial since one bit of such evidence will rarely point to a defendant's guilt.

*Id.* at 99. Here, the State has offered essentially only one bit of evidence, namely that the gun was hidden, to prove Mr. Bracey's knowledge that the gun was stolen.

On these facts, the State has failed to meet its burden of coming forward with sufficient evidence that Mr. Bracey knew or had reasonable grounds to believe that the gun in his possession was stolen. His motion to dismiss should have been allowed by the trial court, and the Court of Appeals erred in affirming the trial court. Therefore, I respectfully dissent.

Justice RIGGS joins in this dissenting opinion.